## AMERICAN CENTRAL INS. CO. v. HULEN.*
### No. 12198.

Court of Civil Appeals of Texas. Fort Worth.
May 17, 1930.

Rehearing Denied July 5, 1930.

Thompson, Knight, Baker & Harris and George S. Wright, all of Dallas, for appellant.

Thompson & Barwise, of Fort Worth, for appellee.

#### DUNKLIN, J.

The American Central Insurance Company has appealed from a judgment in favor of J. A. Hulen, receiver for the Trinity & Brazos Valley Railway Company, on a fire insurance policy issued to that company.

The trial was before the court without a jury on an agreed statement of facts which was in the record; and the only question involved on this appeal is whether or not the fire loss for which a recovery was awarded was a risk covered by the provisions of the policy issued by the appellant to the appellee. The recovery was for damage to an engine that had been leased by plaintiff from the Fort Worth & Denver City Railway Company for the sum of $1,524.56, which sum it was agreed on the trial was the actual fair and reasonable cost of repairing the engine and replacing parts thereof, which had been destroyed by fire.

The policy sued on was dated March 1, 1923, and the term for which the insurance therein granted was for one year from and after that date. The total amount of insurance stipulated in the policy was $1,757,462 and the premiums paid therefor were $17,825.-86. Attached to the policy and as a part thereof were separate schedules of the items insured. Schedules Nos. 1 to 7, inclusive, covered depots, section houses, bridges, platforms, and numerous other structures. The items so covered were listed separately with the value and insurance on each. In schedule No. 10 there was listed locomotives and tenders, passenger coaches, baggage and mail cars, freight cars, working equipment, all of which was owned by the insured, and also 26 Mather stock cars which had been leased by the assured, all of which was itemized with the amount of insurance stated for each item. Following those lists of property, schedule No. 10 contains these provisions:

"Schedule No. 10—Owned Rolling Stock.

"$924,260.—On Rolling Stock, Owned by the assured, as hereinafter described and numbered, which is to be covered wherever it may be, whether in any Engine or Car House, or Repair Shop, or other Building of the Assured, or otherwise, upon the Line of the Road hereby insured, and its Branches, Spurs, Side Tracks and Yards, owned, leased or operated by the Assured at the date of this policy, and upon such extensions or branches, as may be constructed by or for the Assured during the term of this policy, but this insurance shall not apply on the Line of any Road leased or operated by the Assured, unless the name of such Road is specified as being insured in part under this Policy, or its name given in this Schedule. * * *

"The insurance as above described shall also apply to the *Liability of the Assured* for Rolling Stock (not being Rolling Stock leased by the Assured) which is the property of other Railroads (but shall not attach on Rolling Stock owned by Private Individuals or by Firms or Corporations other than Railway Corporations), while the same is temporarily on the Line of the Road hereby insured, its Branches, Spurs, Side Tracks and Yards, as described above, in the usual and necessary interchange of traffic and of cars, the classes and limits to be confined solely to the classes insured and particularly described above. It being understood and agreed that all claims on foreign cars are to be limited to the amounts specified above on cars of similar capacity, but if no car of identical capacity be insured above, then the liability hereunder shall be limited to the amount specified on car of next capacity; but nothing herein contained shall be construed as covering cars of classes other than those specified and insured above. * * *

"It is understood by this Company that the above specification No. 10 correctly represents the full number of the Locomotives and Tenders and Cars of their respective

---

*Writ of error granted.

classes, owned by the Assured at the date of this policy, according to the records of the assured; and it is agreed by the Assured, that any Rolling Stock acquired during the currency of this policy (other than Rolling Stock being acquired under the terms of Car Trust agreements and insured elsewhere) shall be reported to this company within thirty days after its acquirement, and the appropriate pro rata premiums paid therefor, from date of its acquirement, failing in which, this Company shall not be liable for such additional Rolling Stock. It is further understood and agreed that should any Car Trust agreement be satisfied and the insurance on such Rolling Stock expire during the term of this Policy, such Rolling Stock shall be added hereto at the expiration of the insurance, and the proper pro rata premium paid on it. * * *

"To avoid misunderstanding, it is agreed that Leased Rolling stock described in Schedule No. 10 shall be covered wherever it may be in like manner as Owned Rolling Stock under Schedule No. 10 is covered."

The following are the facts agreed upon by the parties in the suit on the trial of the case:

"It is agreed:

"1. That John A. Hulen, plaintiff, is the duly and legally appointed and qualified receiver for the Trinity & Brazos Valley Railway Company and of all its properties of every kind and character and as such receiver is entitled and authorized to bring this suit; that defendant is a foreign corporation doing business in the State of Texas and engaged in the general business of insurance against loss and damage of property by fire.

"2. That on or about the 1st day of March, 1923, plaintiff, as Receiver, was the owner and possessor of all the real and personal property of the Trinity & Brazos Valley Railway Company of every kind and character in the State of Texas; that on a certain date, towit: March 1st, 1923, defendant executed, issued and delivered to plaintiff its certain written contract or policy of insurance known as Texas Standard Fire Policy No. 7003, whereby, in consideration of the payment by plaintiff to defendant of the premium of Seventeen Thousand Eight Hundred Twenty-five Dollars Eighty-Six Cents ($17,825.86), the defendant insured the plaintiff from the 1st of March, 1923, at noon to the 1st day of March, 1924, at noon, against loss and damage by fire to the amount of One Million, Seven Hundred Fifty-Seven Thousand, Four Hundred Sixty-Two Dollars ($1,757,462.00) upon certain property described in said policy of insurance and in the schedules belonging to and made a part of said policy, as is more fully shown by said policy of insurance and the printed schedules, binders and endorsements belonging to and made a part of said policy; said policy, schedules and endorsements being

hereto attached, marked 'Exhibit A' and made a part hereof.

"3. That during the latter part of October, 1923, and the early part of November, 1923, on the dates hereinafter specifically set out, plaintiff herein leased from the Fort Worth and Denver City Railway Company and the Missouri, Kansas & Texas Railroad Company fourteen (14) locomotives or engines, all of which entered the service of the receiver on the dates shown in 'Exhibit B'; that at noon on November 16, 1923, plaintiff reported the acquirement of said equipment to defendant herein and asked for insurance on said equipment in the sum of One Hundred and Twelve Thousand Dollars ($112,000.00), all of which is fully shown by a true and correct copy of said report attached hereto and made a part hereof and marked 'Exhibit B'; that the defendant duly acknowledged receipt of plaintiff's report of November 16, 1923, as shown by a true and correct copy of said acknowledgment hereto attached and made a part hereof and marked 'Exhibit B', and thereupon delivered to plaintiff its duly executed endorsement No. 5, which said endorsement is attached to and forms a part of said original policy No. 7003 and covers the locomotives therein set out.

"That after said endorsement No. 5 had been attached to and made a part of said policy, defendant rendered plaintiff a bill in the amount of Two Hundred Thirty-Seven Dollars and Fifty-Five Cents ($237.55) additional premium, (which premium was promptly paid by plaintiff to defendant).

"3-A. That the $237.55 additional premium covered the property described in endorsement No. 5 from noon November 16, 1923, to noon, March 1, 1924, and was the only premium that the defendant ever sent bill to the plaintiff for. That the plaintiff is now, and has been at all times material herein ready, willing and able to pay any premiums proper on said leased locomotives from the dates of their acquirement, and plaintiffs now offer to pay such premiums and defendant does not question the sufficiency of the plaintiff's tender.

"3-B. That the defendant insurance company refused to comply with the request contained in the letter, exhibit B, to bind insurance by endorsement on the locomotive described in said letters to be effective from the date of the entry of such locomotive in the service of the plaintiff, and sent endorsement No. 5 attaching from noon November 16, 1923, and a bill for premium $237.55.

"4. That on the 16th day of November, 1923, at one o'clock A. M. Fort Worth and Denver City Railway Company engine No. 307 was damaged and partially destroyed by fire at Mildred, Navarro County, Texas; that said engine at the time of said fire was leased, controlled and operated by the plaintiff upon the line of the road operated by plaintiff.

"5. Plaintiff in due time after the fire gave to defendant due notice and proof of the fire and loss and demanded payment of the loss in the sum of One Thousand Five Hundred Twenty four dollars and Fifty-six cents ($1,-524.56) which sum was the actual, fair and reasonable cost of repairing said engine and replacing the parts thereof which were destroyed with parts of like kind and quality, but defendant has failed and refused, and still fails and refuses to pay said sum."

Appellee relies for a recovery upon the following provision of the policy: "Any rolling stock acquired during the currency of this policy (other than rolling stock being acquired under the terms of Car Trust agreements and insured elsewhere) shall be reported to this Company within thirty days after its acquirement, and the appropriate pro rata premiums paid therefor, from date of its acquirement" in connection with the further provision that "leased rolling stock described in Schedule 10 shall be covered wherever it may be in like manner as owned rolling stock under Schedule 10 is covered." It is insisted in effect that by virtue of those provisions, payment of the premium and giving of the notice on November 16, 1923, had the effect to insure the locomotive from the date it was acquired, to wit, October 30, 1923. According to appellant's contention, none of the quoted provisions from the policy could have that legal effect.

The determination of that issue is unnecessary in view of this stipulation in the agreed statement of facts:

"That the $237.55 additional premium covered the property described in endorsement No. 5 from noon November 16, 1923, to noon, March 1, 1924, and was the only premium that the defendant ever sent bill to the plaintiff for."

And the binder issued by the appellant on November 30, 1923, acknowledging receipt of that premium, expressly recites that the insurance on the car in question then granted would be from November 16, 1923. It thus appears that by special contract the insurance on the locomotive in question did not begin until noon, November 16, 1923, several hours after the car in question had been burned. Such being the special contract of insurance on that locomotive, appellee is in no position to claim that the locomotive was insured under the general provisions of the policy above quoted, and therefore whether, in the absence of the specific contract noted, that claim could have been sustained, becomes a moot question, and we shall not attempt to determine it.

It is a well-settled rule that there can be no binding contract for fire insurance on property which has already been destroyed, since there is then nothing to which the policy can attach. Alliance Ins. Co. v. Continental Gin Co., 285 S. W. 257, by the Supreme Court; United States Casualty Co. v. Rodriguez (Tex. Civ. App.) 288 S. W. 487; Fowler v. Preferred Accident Ins. Co., 100 Ga. 330, 28 S. E. 398.

It thus conclusively appears that appellee had no enforceable contract of insurance on the locomotive when it was burned; and therefore the judgment of the trial court is reversed, and judgment is here rendered in favor of the appellant.