## HULEN v. AMERICAN CENT. INS. CO.
### No. 1309—5810.

Commission of Appeals of Texas, Section B.
Jan. 27, 1932.

Thompson & Barwise and B. V. Thompson, all of Fort Worth, for plaintiff in error.

Thompson, Knight, Baker & Harris, George S. Wright, and Will C. Thompson, all of Dallas, for defendant in error.

RYAN, J.

John A. Hulen, receiver for the Trinity & Brazos Valley Railway Company, brought this suit in the district court of Tarrant county, against the American Central Insurance Company, to recover, on a fire insurance policy, damages to a locomotive engine leased to the receiver by the Fort Worth & Denver City Railway Company, the engine having been partially destroyed by fire at about 1 o'clock a. m. on November 16, 1923, at which time said engine was leased, controlled, and operated by the receiver upon the line of road operated by him.

The policy sued on was dated March 1, 1923, and insured the receiver for the term of one year after its date, at noon, against loss by fire upon certain property described in the policy, which included, in so far as is material to this case, the following classes of property: (a) Rolling stock, including engines, locomotives, and cars, owned by the assured at the date the policy was written; (b) rolling stock, including engines, locomotives, and cars, leased by the assured at the date the policy was written; (c) rolling stock to be afterwards acquired by the receiver, concerning which the policy contained the agreement that such rolling stock acquired during the currency of the policy should be reported to the insurance company within thirty days after its acquirement and the appropriate pro rata premium paid therefor, from date of its acquirement, failing in which the company should not be liable for such additional rolling stock.

The locomotive engine in question was acquired by lease from the Fort Worth & Denver City Railway Company, and entered the service of the receiver on October 30, 1923.

The receiver relies for recovery upon the following provision of the policy: "Any rolling stock acquired during the currency of this policy (other than rolling stock being acquired under the terms of car trust agreements and insured elsewhere) shall be reported to this company within thirty days after its acquirement, and the appropriate pro rata premium paid therefor, from date of its acquirement, failing in which, this company shall not be liable for such additional rolling stock," in connection with the clause:

"To avoid misunderstanding, it is agreed that leased rolling stock described in Schedule No. 10 shall be covered wherever it may be in like manner as owned rolling stock under Schedule 10 is covered."

The policy provided for insurance on owned rolling stock under Schedule 10, as follows: "On rolling stock owned by the assured as hereinafter described and numbered which is to be covered wherever it may be, whether in any engine or car house or repair shop or other building of the assured or otherwise upon the line of the road hereby insured and on its branches, spurs, sidetracks and yards, owned, leased or operated by the assured at the date of this policy, and upon such extensions or branches as may be constructed by or for the assured during the term of this policy, but this insurance shall not apply on the line of any road leased and operated by the assured, unless the name of such road is specified as being insured in part under this policy or its name given in this Schedule."

The receiver claims that, by virtue of the above provisions of the policy, the reporting of the acquirement of the engine and the offer to pay the premium had the effect of insuring the locomotive from the date of its acquirement, to wit, October 30, 1923. The insurance company contends that none of the quoted provisions, together with the facts recited, could have that legal effect.

At noon, on November 16, 1923, the receiver reported the acquirement of the locomotive in question with thirteen other locomotives, and asked for insurance on all said equipment in the sum of $112,000. Six of said locomotives, including No. 307, the one in question, were owned by the Fort Worth & Denver City Railway Company, and eight of them, owned by the Missouri-Kansas-Texas Railway Company, were all under lease by the receiver and in service on his line. It was requested that "date insured be made effective as of date of entering our service." Locomotive No. 307 was listed as having entered such service on October 30, 1923.

The report concluded, "Will you please acknowledge receipt of this policy and arrange to let us have proper endorsement to the policy, together with bill for additional premium in due course." Receipt of such report was acknowledged on December 3, 1923, and bears stamp of its receipt by the auditor's office of the Trinity & Brazos Valley Railway Company, as of date December 4, 1923. Indorsement No. 5, attached to the policy, covering the locomotives referred to, bears stamp of its receipt by said auditor's office as of date December 14, 1923.

The additional premium amounting to $237.55, covering the locomotives and certain other property described in indorsement No. 5, was promptly paid, "and was the only premium that the insurance company ever sent bill to the receiver for. The receiver is now and has at all times been ready, willing and able to pay any premiums proper on said leased locomotives from the dates of their acquirement, and now offers to pay such premiums," and the insurance company does not question the sufficiency of such tender by the receiver. The defendant insurance company refused to comply with the request contained in the letter, to bind insurance by indorsement on said locomotive described in said report, to be effective from the date of the entry of such locomotive in the service of the plaintiff, and sent indorsement No. 5, attaching from noon November 16, 1923, and a bill for premium, $237.55.

Trial before the court (a jury having been waived) resulted in judgment for the receiver in the sum of $1,592.36, which the Court of Civil Appeals reversed on the ground that under indorsement No. 5 the insurance on the locomotive in question did not begin until noon, November 16, 1923, several hours after it had been burned, and there can be no binding contract for fire insurance on property which had already been destroyed, since there is then nothing to which the policy can attach.

The Court of Civil Appeals accordingly rendered judgment in favor of the insurance company and against the receiver. 30 S.W. (2d) 563.

### Opinion.

The only question, in our view of the case, is whether insurance did or did not exist at the time of the fire, and this must be determined from the terms of the original policy.

An insurance policy is a contract, and, in construing it, the same rules of law will be applied as in the case of other contracts. Brown v. Palatine Ins. Co., 89 Tex. 590, 35 S. W. 1060; 14 R. C. L. p. 925; 32 C. J. p. 1146.

In Brown v. Palatine Ins. Co., supra, Judge Brown announced the following:

"To determine the intention of parties to a contract of insurance its construction must be governed by the following rules:

"(1) The language, being selected and used by the insurer to express the terms and conditions upon which it issued the policy, will be strictly construed against it and liberally in favor of the insured. If the words admit of two constructions that one will be adopted most favorable to the insured.

"(2) The language used must be construed according to the evident intent of the parties, to be derived from the words used, the subject matter to which they relate, and the matters naturally or usually incident thereto.

"(3) Forfeitures are not favored by the law and if the language used is fairly susceptible

of an interpretation which will prevent a forfeiture it will be so construed."

Keeping the above rules in mind, the clause on after-acquired property, whether by ownership or by lease, is plain and clear. Its purpose was: (1) To cover all after-acquired rolling stock (except rolling stock acquired under trust agreements and insured elsewhere in the policy), but to limit the insurance to such stock as may be acquired within thirty days previous to the insured's report thereof. This was to protect the insurer in collecting its premium, and to provide for insurance in advance without requiring the insured to go through the detail work incident to reporting each individual acquirement, it being evident from all the terms of the policy and the course of dealing between the parties that it was in their contemplation that numerous acquirements of equipment would be made; (2) to assure the continuity of the insurance in the same company on after-acquired property without the trouble of a separate report and separate policy or binder or indorsement on each individual transaction.

That this was the intent and understanding of the parties is evident from another clause in the policy covering car trust agreements, as follows: "It is further understood and agreed that should any car trust agreement be satisfied and the insurance on such rolling stock expire during the term of this policy, such rolling stock shall be added thereto at the expiration of the insurance and the proper pro rata premium paid on it."

Under this clause it is evident that the parties contemplated that car trust agreements might be satisfied, in which event insurance would be desired under the terms of the policy, just as under the other clause it is evident that the parties contemplated that rolling stock, to be owned or leased, not subject to car trust agreements, might be acquired during the term of the policy and insurance thereon be desired under the terms of the policy.

When the receiver reported the acquisition of locomotive No. 307 to the insurance company, on November 16, 1923, and requested that it be bound as of the date (October 30, 1923) it entered the receiver's service, and offered to pay the proper premium therefor, he complied strictly with the terms of the policy, and did everything required of him thereunder. No question is made of the sufficiency of the receiver's tender, and there is nothing left for him to do.

It is true that an insurance company is not liable for a loss which has occurred prior to the attempted insurance, and, if the property was not insured under the terms of the policy as originally written, the company is not liable, but the insurance here is based upon the terms of the policy, and the company could not refuse to so insure the property by making its indorsement effective only from November 16, 1923.

We recommend that the judgment of the Court of Civil Appeals be reversed and that of the district court be affirmed.

CURETON, C. J.

Judgment of the Court of Civil Appeals is reversed, and that of the district court is affirmed, as recommended by the Commission of Appeals.