Argued May 18, affirmed October 29, reconsideration denied December 13, petition for review denied December 27, 1979 (288 Or 253)

# VANDERZANDEN BROS., INC.,
## *Respondent,*
### *v.*
# MUTUAL OF ENUMCLAW
# INSURANCE CO.,
## *Appellant.*

### (No. 37-337, CA 11033)

601 P2d 889

John H. Clough, Portland, argued the cause for appellant. With him on the briefs were Alfred T. McGill and McGill, Clarke & Kapranos, Portland.

Brad Littlefield, Portland, argued the cause for respondent. With him on the brief was Goldsmith, Siegel, Engel & Littlefield, Portland.

Before Schwab, Chief Judge, Tanzer, Richardson and Roberts, Judges, and Peterson, Judge Pro Tempore.

TANZER, J.

## TANZER, J.

In this action at law on a property damage insurance policy, the jury returned a verdict for the plaintiff corporation. Defendant appeals, claiming that it was entitled to judgment, as a matter of law.

In 1973, the defendant insurance company issued to plaintiff a farmowner's insurance policy which insured designated farm equipment. The policy remained in force and effect through August 22, 1976, and contained the following provision:

> "1. Additionally Acquired Property * * *: This policy is extended to cover additional items of a nature similar to those scheduled herein or usually covered under a Mobile Agricultural Equipment Floater or Livestock Floater, the property of the insured, which items have been acquired subsequent to the attachment date and during the term of this policy. In consideration of this extension the insured agrees to report such additions within thirty (30) days from the date acquired and to pay premium thereon from the date acquired at pro rata of the policy rate. It is specifically understood and agreed, however, that this policy shall cease to cover such additional items if they are not reported to the Company within the said thirty (30) day period."

Defendant's agent testified that as a matter of practice oral notification of newly acquired farm equipment is sufficient to effect coverage if the agent is given a description of the item being ordered and its value. He further testified that serial numbers are not required to effect coverage of unlicensed farm equipment, although occasionally the company later requests such numbers. These oral procedures had previously been followed by the parties in reporting new equipment for coverage.

On January 7, 1976, plaintiff signed a purchase order for the purchase of a John Deere combine from a John Deere implement dealer in Hillsboro, Oregon. The dealer told plaintiff that the combine would be

[841]

delivered in February, 1976, but there was no delivery date stated in the purchase order.

On January 9, 1976, Dale and Richard Vanderzanden (both officers of the plaintiff corporation) went to the defendant's agent's office. Following past practice for reporting new equipment for coverage, they reported that the company had purchased a new combine, and that delivery was expected "sometime in February." Dale Vanderzanden testified that he furnished the type of information "usually given him [the agent]" when changes were made in their equipment schedule—the make, the model number, and the price—expecting that "it would be put on our equipment schedule and a few months later we would get an endorsement and a bill would accompany it." The effective date of the endorsement always dated back to the date called in. The agent made no request that he be notified when delivery was made.

On February 2, 1976, the combine was received by the dealer from the manufacturer and on March 11, plaintiff. signed a retail installment contract.[1] It was not until June 1, however, that plaintiff took physical possession of the combine from the dealer. Dale Vanderzanden testified that the reason for the delay in delivery was because the combine "takes quite a bit of dealer preparation and we don't really need the combine until the latter part of June." On August 22, 1976, the combine was damaged in an accident, which gave rise to the claim asserted in this lawsuit.

The issue raised by defendant's motions for summary judgment and directed verdict and by its exception to instructions is whether notice of new property for coverage was given "within thirty (30) days from the date acquired" as that phrase is used in the policy. Defendant contends that notice was premature because it was given prior to the acquisition of the

---

[1] The purchase order agreement which had been executed on January 7, 1976, specifically provided for subsequent execution of "a Time Sale Agreement (Retail Installment Contract) * * * on or before delivery of the Equipment ordered herein * * *."

combine. Plaintiff contends that signing of a purchase order gave plaintiff an interest sufficient to be regarded as acquisition. Our analysis differs from both contentions.

The beginning point in determining the meaning intended by a word or phrase in a contract is the reason the parties used that word or phrase. For that, we look to the interests of the parties served by it. The parties focus on the word "acquired," but intent may be more easily found in the broader context of a phrase than by plucking a single word from its setting.

■ The interests to be served by the notice provision of the policy lead to the conclusion that the phrase "within thirty (30) days from the date acquired" is in the nature of a deadline for notice (*i.e.,* "not later than 30 days after acquisition"), rather than as a time frame with a fixed starting point (*i.e.,* "after acquisition but no more than 30 days after"). The reciprocal purpose of the provision is to provide immediate protection for the insured as its situation changes and to enable the insurer to underwrite new exposure within a reasonable length of time.[2] The provision protects the company against problems arising from late notice, not early notice. Late notice subjects the insurer to exposure to risk of which it has not been apprised and loss of premiums which it has been unable to charge. Early notice does not subject an insurer to such risk and loss unless the notice is so remote or nonspecific as to fail to apprise the insurer of the situation. Interpreting the provision as a deadline rather than as a starting point is consistent with the apparent purpose of the contractual phrase. If an insured notifies the insurer of a change in property covered in time for the insurer to adjust its underwriting and billing, it should make no

_____

[2] Notice problems had arisen on this policy a year before. Defendant cautioned its agent by letter that new acquisitions by plaintiff must be reported within 30 days of acquisition. The company wrote: "We must require strict compliance [with the 30-day notice provision] in order to avail ourselves of the opportunity to underwrite new exposures within a reasonable length of time."

difference whether the notice is given before or after acquisition. Therefore, whether signing a purchase order constitutes acquisition is not a relevant question in this case.

Because this is a case of early notice, not of late notice, our conceptualization of the phrase as a deadline is intended to demonstrate a difference in approach. We do not intend in this case to construe the notice provision as it relates to notice after acquisition.

■ Here, plaintiff gave notice within two days of execution of a purchase order and one month prior to the expected delivery in February. As it happened, delivery was delayed until June, but the delay had no effect on defendant's willingness to insure. Plaintiff's act of giving the earliest possible notice served to assure him coverage from the earliest foreseeable moment of risk and to enable defendant to underwrite its new exposure within a reasonable time. There is no contention that notice was too remote or nonspecific. Hence, under the facts of this case, we hold that notice was given prior to 30 days after acquisition and was therefore timely under this policy.

Affirmed.