**SHERMAN INTERNATIONAL CORPO-RATION, Plaintiff–Appellant,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY, Defendant–Appellee.**

No. 89–7722.

United States Court of Appeals, Eleventh Circuit.

Jan. 29, 1991.

Mark S. Boardman, Porterfield, Bainbridge, Mims, Harper & Mills, P.A., Birmingham, Ala., for plaintiff-appellant.

Eugene P. Stutts, Maston E. Martin, Jr., Spain, Gillon, Grooms, Blan & Nettles, Birmingham, Ala., for defendant-appellee.

Before HATCHETT and ANDERSON, Circuit Judges, and GODBOLD, Senior Circuit Judge.

PER CURIAM:

One week after Sherman International Corporation moved into its new office-warehouse fire damaged the building and its contents. Sherman filed a claim with its insurer, Liberty Mutual Insurance Co., for the loss of the building and the personal property it contained. Liberty Mutual denied the claim, Sherman sued, and the district court granted Liberty Mutual summary judgment. We affirm.

## BACKGROUND

Sherman acquired the property on which the office-warehouse was built in 1987 when it purchased the assets of Johnston Concrete Products. Liberty Mutual was Johnston's insurer, and it added Sherman as an insured on all of its policies with Johnston and later renewed the policy for 1988. When Liberty Mutual renewed the policy the only structure on the site was a concrete plant. In early 1988 Sherman constructed a block plant on the site, but it did

not inform Liberty Mutual about the new plant.

In April 1988 Sherman contracted with Pearce Construction Co. to build the office-warehouse, and construction began on May 1, 1988. The contract called for a "turn-key job," which meant that the building was to be ready for occupancy and immediate use by Sherman when Pearce, the independent contractor, completed the project. Sherman moved into the completed office-warehouse on August 13, 1988. Once again, it did not inform Liberty Mutual of the new building on the premises.

Fire damaged the building on August 20. In a letter dated September 1, 1988 Sherman requested that Liberty Mutual increase Sherman's general building and contents coverage to include the office-warehouse and the block plant. Sherman had never before requested insurance for either building.

Sherman's policy provided (emphasis added):

a. Newly Acquired or Constructed Property

(1) You may extend the insurance that applies to [the] Building to apply to:

(a) *Your new buildings while being built* on the described premises; and

(b) *Buildings you acquire* at locations, other than the described premises, intended for:

(i) Similar use as the building described in the declarations; or

(ii) Use as a warehouse.

\*　\*　\*　\*　\*　\*

(2) You may extend the insurance that applies to Your Business Personal Property to apply to that property at any location you acquire other than at fairs or exhibitions.

\*　\*　\*　\*　\*　\*

(3) *Insurance under this Extension for each newly acquired or constructed property will end when any of the following first occurs:*

(a) This policy expires.

(b) *30 days expire after you acquire or begin to construct the property;* or

(c) You report values to us.

Liberty Mutual notified Sherman that the August 20 fire was not covered under the extension of coverage provision of the policy because Sherman had not notified the company within the 30 days required that it was constructing the office-warehouse. The loss occurred more than 30 days after Sherman began construction on the building.

Sherman sued, asserting diversity jurisdiction and alleging breach of contract and bad faith. It sought to recover for the loss of both the building and the personal property it contained. Sherman's principal contention was that it was entitled to coverage under the extension provisions because its loss occurred within 30 days after it occupied, and thus "acquired," the warehouse. Sherman said that it acquired the warehouse from Pearce rather than constructing it because Pearce was an independent contractor and Pearce's employees, rather than Sherman's, performed the labor needed to construct the warehouse.

The district court granted Liberty Mutual summary judgment on both claims, holding that because Sherman had begun constructing the warehouse more than 30 days before its loss it was not entitled to coverage for the warehouse or its personal property, and that Liberty Mutual was not guilty of bad faith.[1]

## DISCUSSION

Sherman's principal contention, that it acquired the warehouse from Pearce rather than constructing it, is meritless. An owner of real property who hires an independent contractor to build a building on that real property "constructs" that building. The warehouse stood on land that Sherman owned under its agreement to purchase

---

**1.** Sherman's brief does not discuss the district court's grant of summary judgment on the claim of bad faith. Because Sherman has abandoned its claim, and because we agree that there was no evidence of bad faith, we affirm the district court's grant of summary judgment on the bad faith claim.

Johnston's assets, and the building was at all times part of the real property on which it stood. Thus, at no time did Pearce have a possessory interest in the warehouse that Sherman or anyone else could acquire. Furthermore, Pearce did the work on the building at the request of, and according to specifications provided by, Sherman. In short, Sherman constructed the warehouse.

Sherman is equally unconvincing in its attempt to analogize its transaction with Pearce to cases in which courts have held that an insured did not acquire personal property until it took possession of the property.[2] Sherman does not explain why these cases that discuss when an insured who purchases personal property "acquired" that property provide any support for its contention that it acquired the warehouse. The cases Sherman cites are readily distinguishable because in the typical transaction involving personal property one party has title to the property and the other party acquires that title, while in this case Pearce never had any possessory interest in the warehouse that Sherman could acquire.

We also reject Sherman's contention that the policy is ambiguous and must be construed against the insurer. Sherman's policy is unambiguous. We have recognized that "[u]nder Alabama law, if an insurance contract provision is subject to more than one interpretation, it should be construed in favor of coverage, and against the insurer." *Jordan v. Reliable Ins. Co.*, 922 F.2d 732 (11th Cir.1990), quoting *Colbert County Hospital Board v. Bellefonte Ins. Co.*, 725 F.2d 651, 654 (11th Cir.1984). But we will not insert ambiguity "by strained and twisted reasoning into contracts where no such ambiguities exist." *Smith v. Horace Mann Ins. Co.*, 713 F.2d 674 (11th Cir. 1983), quoting *Billups v. Alabama Farm Mutual Cas. Ins. Co.*, 352 So.2d 1097, 1102 (Ala.1977).

The policy before us is just such an unambiguous contract. Sherman contends that the terms "construct" and "acquire" are ambiguous and should be construed against Liberty Mutual, but the circumstances of this case raise no doubt as to the meaning of these terms. We have already held that a landowner who contracts to have a building built on its land constructs that building. The alternative meaning for "construct" that Sherman proposes, that a landowner does not construct a building unless its employees perform the construction tasks, is unreasonably restrictive. So construed, a policy provision referring to buildings constructed by the policyholder would rarely apply because landowners would not often undertake the task themselves. We will not use such a strained interpretation of the policy to find ambiguity where none exists. *Smith*, 713 F.2d at 676. Thus we hold that under the unambiguous terms of the policy Sherman constructed the office-warehouse.

Because it constructed the warehouse, Sherman was not covered under the policy's extension provisions at the time of its loss. Sherman began construction on the warehouse on May 1, 1988, and its coverage under the extension ended 30 days later. The loss did not occur until August 20, 1988, when both the warehouse and the personal property it contained were no longer covered under the extension.[3]

AFFIRMED.

---

**2.** See e.g. *Canal Ins. Co. v. C.I.T. Financial Services Corp.*, 357 So.2d 308 (Miss.1978); *Bedgood v. Hartford Accident and Indemnity Co.*, 384 So.2d 1363 (Fla.App.1980).

**3.** The policy provision dealing with personal property permitted extension of coverage to "[personal] property at any location you *acquire*...." (emphasis added). Thus Sherman's personal property was not insured when the loss occurred because it was not at a location that Sherman had acquired.