[No. B089803. Second Dist., Div. Seven. July 15, 1997.]

S. KORNREICH & SONS, INC. et al. Cross-complainants and Appellants,
v.
GENESIS INSURANCE COMPANY, Cross-defendant and Respondent.

COUNSEL

Mound, Cotton & Wollan, Diane P. Simon and Elizabeth S. Reed for Cross-complainants and Appellants.

Gordon & Rees, P. Gerhardt Zacher, Alexander M. Weyand and William L. Marchant for Cross-defendant and Respondent.

OPINION

JOHNSON, J.—In this case, the trial court granted an insurance company's motion for summary judgment on a cross-complaint filed by a broker because the court determined temporary coverage of the insured's newly acquired property had expired before the fire loss occurred. We conclude the provisions of the policy only gave the insured temporary coverage of the new property and this coverage terminated before the loss. Accordingly, we affirm the trial court's decision.

### FACTS AND PROCEEDINGS BELOW

This appeal arises from a fire loss claim on a commercial property insurance policy. In the civil action below, Raintree Associates, Ltd. and its general partner Stanley Fimberg, Ltd. (collectively Raintree) alleged causes of action for breach of contract, breach of fiduciary duty, negligence, and declaratory relief. The defendants in Raintree's lawsuit were Genesis Insurance Company (Genesis), the alleged insurer; S. Kornreich & Sons, Inc., and Associated Programs, Inc. (collectively Kornreich), which are affiliated New York insurance brokers who requested property coverage for Raintree from Genesis; and M.G. Skinner & Associates, Inc. (Skinner), the Los Angeles insurance broker the insured engaged to obtain the coverage at issue here.

Kornreich also filed a cross-complaint against Genesis for total indemnity, partial indemnity and equitable apportionment. The trial court granted summary judgment for Genesis on the cross-complaint and Kornreich filed this appeal.

The underlying lawsuit and the Kornreich cross-complaint both originate with events which started in 1992. In May of that year Fimberg and Raintree Associates became general partners in an apartment complex known as Raintree Apartments. At the time, they already were the named insured under a master insurance policy (Policy) issued by Genesis, insuring them against casualty loss to or at their commercial property during the period

April 1, 1992, to January 1, 1993. The properties covered by the Policy were multiunit apartment buildings listed in a schedule of locations attached to the Policy.

The Policy set forth the procedure for adding new property to the schedule under the heading of "Coverage Extensions." The "Newly Acquired or Constructed Property" subsection grants the policyholder the right to extend coverage to real property acquired or constructed during the policy period.

The relevant language of the Policy states as follows:

"5.  Coverage Extensions
". . . [Y]ou may extend the insurance provided by this Coverage Part as follows:

"a.  Newly Acquired or Constructed Property
"(1)  You may extend the insurance that applies to Building to apply to:

"(a)  Your new buildings while being built on the described premises; and
"(b)  Building you acquire at locations, other than the described premises, intended for
"(i)  Similar use as the building described in the Declarations; or
"(ii)  Use as a warehouse

"The most we will pay for loss or damage under this Extension is 25% of the Limit of Insurance for Building shown in the Declarations, but not more than $250,000 at each building.

". . . . . . . . . . . . . . . . . .

"(3)  Insurance under this Extension for each newly acquired or constructed property will end when any of the following first occurs:

"(a)  This policy expires,

> "(b)    30 days expire after you acquire or begin to construct the property[1]; or
>
> "(c)    You report values to us.
>
> "We will charge you additional premium for values reported from the date construction begins or you acquire the property."

On May 29, 1992, Skinner asked Kornreich to add Raintree Apartments to the Policy, effective May 1, 1992, the date of acquisition. On July 28, 1992, during the 90-day reporting period for the coverage extension, Kornreich advised Genesis by facsimile to add Raintree Apartments to the Policy effective May 1, 1992, and reported the value of the property as required by the Policy. The facsimile identified the building as a multiunit dwelling, gave its location, specified the number of units, and itemized the values of the building, its contents, and its rental income. The facsimile also stated as a postscript, "[f]ormal Order to follow shortly," which Genesis understood to mean Kornreich would forward a proposed written binder. Genesis did not receive such a binder.

Genesis replied to Kornreich's request on the same day, asking for additional information about the property so it could make an underwriting decision. In addition, Genesis stated (1) it would not "backdate" coverage for the newly acquired property; (2) it would only provide Kornreich with a premium quotation upon receipt of the requested additional information; (3) any additional coverage would be subject to a favorable inspection of the property; (4) it would only quote the risk based on the individual characteristics of the property; and (5) it would not add Raintree Apartments at a rate previously agreed for another portion of the insured's account.

On August 1, 1992, Kornreich asked for an acknowledgment of coverage extension, as it "originally requested," and provided the additional information Genesis sought. Moreover, Kornreich stated, "[b]y signed Binder Agreement, there is automatic 90-day coverage at policy limit for new acquisition."

Genesis's reply on August 5, 1992, reiterated its position from the July 28 letter in its entirety. In addition, the letter expressed Genesis's concern about the property's low rental income, suggesting "either low income housing or substandard housing—neither of which [Genesis was in] a market for now or in the future." Genesis stated the "risk [would] be looked at no further" until

---

[1]In the property insurance binder of April 1, 1992, the parties modified section 5.a.(3)(b) of the Policy to extend the reporting period for newly acquired property from 30 to 90 days.

Kornreich provided the additional information, specifically loss history and prior carrier information.

There was no additional correspondence between Kornreich and Genesis from August 5, 1992, until a fire damaged the Raintree Apartments on December 18, 1992. However, two internal Kornreich memoranda, dated November 11 and December 13, acknowledged Genesis had not recognized coverage on the Raintree Apartments. Also, Genesis never billed Kornreich nor Raintree for additional premiums on the Raintree Apartments.

After the December 18 fire, Raintree made a claim with Genesis seeking reimbursement for property damage under the Policy. Genesis denied the claim asserting that as of the date of the fire, the Policy no longer covered Raintree Apartments.

Raintree filed the underlying civil action on June 14, 1993, alleging breach of contract, breach of fiduciary duty, negligence, and declaratory relief and seeking $190,000 in damages. Kornreich filed its cross-complaint against Genesis on May 2, 1994, seeking total indemnity, implied partial indemnity and equitable apportionment.

Kornreich moved for partial summary adjudication on its cross-complaint. Kornreich contended the Policy covered the December 18, 1992, loss because Kornreich and Raintree had fully complied with the terms of the Policy and thereby obtained permanent coverage for Raintree Apartments. Therefore, Genesis, rather than Kornreich, was liable to Raintree as a matter of law. The trial court denied this motion on June 27, 1994, stating the loss was not covered because (1) Genesis refused to backdate the policy to May 1, 1992; (2) the extension policy expired on August 1, 1992, 90 days after acquisition; and (3) the internal memoranda of November 11 and December 13 show no confirmation of coverage as of December 14, 1992.

Genesis then moved for summary judgment against Raintree and Kornreich on August 18, 1994, arguing the automatic coverage under the newly acquired property clauses had expired without permanent extension. The trial court granted this motion with respect to both Raintree and Kornreich, finding "the loss was not covered under [Genesis's] policy" and that "[n]o action for breach of contract can be brought against [Genesis] if there was no coverage under [its] policy for this loss."

The court filed its formal order on October 4, 1994. Kornreich filed its notice of appeal on November 30, 1994, only appealing from the trial court's judgment in Genesis's favor. Kornreich did not seek extraordinary review or

in any way challenge the trial court's denial of its earlier motion for summary judgment. Raintree and Skinner did not separately file or join in the appeal, presumably because the summary judgment did not reach the underlying lawsuit.

DISCUSSION

I.  *The Newly Acquired Property Clause Provided Only Temporary Coverage to the Raintree Apartments.*

■  The issue raised in this appeal is whether section 5.a.(3) of the Policy is properly construed to extend automatic permanent coverage of similar after-acquired properties, or whether Genesis retains the right to deny permanent coverage for such properties even though the insured seeks permanent coverage during the 90-day period of temporary coverage the existing policy provides and the newly acquired properties are "similar" to the original properties the policy covers. If section 5.a.(3) does guarantee automatic permanent coverage then Genesis must cover the insured's, Raintree's, loss, and Kornreich, the broker, may be entitled to indemnity from Genesis for any liability to Raintree.[2]

■  Appellate courts must review a grant of summary judgment de novo. (*Nicholson* v. *Lucas* (1994) 21 Cal.App.4th 1657, 1664 [26 Cal.Rptr.2d 778], citing *Saldana* v. *Globe-Weis Systems Co.* (1991) 233 Cal.App.3d 1505, 1515 [285 Cal.Rptr. 385].) ■  In interpreting insurance policies, courts should give the policy its plain and ordinary meaning. (*Reserve Ins. Co.* v. *Pisciotta* (1982) 30 Cal.3d 800, 807 [180 Cal.Rptr. 628, 640 P.2d 764].) In addition, the court must interpret the policy as a whole, with each clause lending meaning to the other. (*Abifadel* v. *Cigna Ins. Co.* (1992) 8 Cal.App.4th 145, 159 [9 Cal.Rptr.2d 910].)

■  The final sentence of section 5.a.(3) permits the insurer to charge an additional premium for values reported from the date of acquisition. The issue is whether this final sentence, in combination with clause 5.a.(3)(c) and in context with the remainder of the policy, automatically gives the insured permanent insurance covering newly acquired property for the remaining term of the policy period (assuming it qualified for temporary coverage as having a "similar use") in return for the additional premiums assessed based on the values the insured reports.

---

[2]We do not attempt to resolve the issue of whether the insured did in fact meet all conditions precedent to the extension of permanent coverage to Raintree Apartments. We are satisfied with the trial court's finding Raintree properly exercised its right to coverage under the after-acquired property clause.

Genesis interprets the Policy to provide only temporary coverage for newly acquired property and argues all coverage ended no later than 90 days from acquisition because it chose not to provide permanent insurance until it received additional information Kornreich failed to supply. ■ Genesis also emphasizes the unambiguous language of the Policy and distinguishes property insurance from both automobile insurance and "floater" policies.[3]

■ In contrast, Kornreich argues temporary coverage was converted to permanent coverage because the new locations were similar to Raintree's original property and Raintree reported values of property within 90 days of acquisition. By meeting these two preconditions, Kornreich claims insureds automatically acquire permanent coverage on newly acquired properties, whether or not the insurance company requested additional information or inspection. Kornreich asserts the Policy should be interpreted broadly to afford the greatest possible protection for the insured. Kornreich also argues insurance on real property is based on a principle of continuous coverage, as in automobile and stock insurance.

The courts of this state have yet to determine the proper operation of a newly acquired property clause in an insurance policy for commercial real property. However, at least three other state courts have applied principles of automatic coverage to property liability policies where the loss occurred within the period of temporary coverage the policy allowed. (See *McNaul* v. *Kansas Power & Light Co.* (Mo.Ct.App. 1989) 770 S.W.2d 259, 261-262 [holding an insurer liable for payment of judgment issued against insured because the property liability policy at issue automatically extended coverage for 30 days to any property to which insured newly acquired title]; *Federated Mut. Ins. Co.* v. *Anderson* (1996) 277 Mont. 134 [920 P.2d 97, 102] [holding lessee did not "acquire" new property until a 1-week trial period, during which the lessor assumed the risk of loss, had expired, consequently lessee's insurer was liable for loss occurring 30 days after the end of the trial period]; *Vanderzanden Bros., Inc.* v. *Mutual of Enumclaw Ins. Co.* (1979) 42 Or.App. 839, 843-844 [601 P.2d 889, 891-892] [holding an insured's notice timely under a farm equipment policy which required 30 days' notice from the date of acquisition in order to extend coverage to additionally acquired property, when insured gave notice 2 days after execution of a purchase order and 1 month before expected delivery, although actual delivery did not occur until 5 months after execution of the purchase order]; *Sherman Intern. Corp.* v. *Liberty Mut. Ins. Co.* (11th Cir. 1991) 922 F.2d 729 [holding property insurance policy was unambiguous and did not

---

[3] A "floater" policy is one that covers items which have no fixed location such as livestock, jewelry or other items of personal property worn or carried about by the insured.

cover an insured because loss occurred more than 30 days after construction began].)[4]

We conclude the policy for newly acquired buildings is merely a method of providing temporary coverage while the insured obtains permanent coverage, either through endorsement, a separate policy, or another insurer. Such temporary insurance is effective until either superseded by a permanent policy or terminated by the expiration of the time period specified by the coverage extension. (9 Couch on Insurance (2d ed. 1985) § 39:207, p. 652.)

As the trial court determined, temporary coverage had expired prior to the loss. Section 5.a.(3) of the Policy unambiguously specifies coverage will end under the extension of temporary coverage when any of the following first occurs: (a) the policy expires; (b) 90 days expire after acquisition of the property; or (c) the insured reports values to the insurer. Raintree's temporary coverage for newly acquired buildings terminated 90 days after the acquisition of the real property, or on August 1, 1992, more than 4 months before the fire occurred on December 18, 1992.[5] Because the 90-day extension expired before the loss, Raintree's new apartments were not covered at the time of the fire.

---

[4]However, these four courts did not reach the issue before us today, whether Genesis could deny permanent coverage after Raintree had satisfied the terms of the extension provision.

In *McNaul*, because the loss occurred 24 days after the insured acquired title to the property, the Missouri Court of Appeals did not have the opportunity to address the issue whether the policy's coverage extended beyond the 30-day reporting period.

In *Federated Mut. Ins. Co.*, the Supreme Court of Montana only had the opportunity to interpret the meaning of "acquire" as reflected in the newly acquired property provision of the policy at issue. As in *McNaul*, the loss occurred within the 30-day reporting period.

In *Vanderzanden*, although the loss occurred beyond the 30-day reporting period, the issue before the Court of Appeals of Oregon was whether the insured had properly satisfied the conditions of the policy to obtain coverage for the additionally acquired property. Once the court determined the notice was timely, the property received automatic permanent coverage as outlined in the policy.

In *Sherman*, the court dealt with an interpretation of a similar acquired property provision. As in *Federated Mut. Ins. Co.*, the court only interpreted the meaning of "construct" and "acquire" as reflected in the provision. However, the loss occurred after the 30-day temporary coverage period after construction and the insured failed to request insurance or report values of newly acquired property prior to loss.

[5]Because the policy terminated after 90 days irrespective of whether the insured reported values of the new properties to Genesis, we do not reach the question whether the coverage would be terminated immediately upon the insured advising the company of the property values. This was the clause in the policy which bothered this court the most and which creates most of the ambiguity on which Kornreich bases its argument. As Kornreich suggested in its briefing and at oral argument, it makes no practical business sense for an insurer to automatically terminate temporary coverage on after-acquired properties at the moment the insured reports the values of those properties to the company unless at that same moment permanent coverage automatically takes its place. Otherwise no insured would seek to obtain permanent insurance from the original carrier for its after-acquired properties for fear it would lose coverage entirely while that carrier decided whether to extend permanent coverage to the

Although the facts in *Sherman Intern. Corp.* v. *Liberty Mut. Ins. Co.*, *supra*, 922 F.2d 729 are distinguishable, the underlying rationale in that case supports a strict interpretation of the Policy. The *Sherman* court declared a practically identical policy[6] to be unambiguous and denied the insured recovery because the insured neglected to inform the insurer it was constructing a "similar use" building and did not report values for the new building within the requisite time frame. (*Sherman, supra*, 922 F.2d at p. 731.) Consequently, the insured failed to meet both conditions precedent and could not argue it had secured permanent coverage. (*Id.* at pp. 729-730.) The court openly rejected an ambiguous reading in favor of the insured, and refused to "strain" or twist" the policy's unambiguous words. (*Id.* at p. 731.) Although Raintree met the conditions in the Policy, this court applies the rationale in *Sherman* and finds the Policy unambiguous. The 90-day extension in the Policy clearly expired with no new permanent policy in place, just as the 30-day limitation of temporary coverage in *Sherman* terminated before the fire. Thus, we reject Kornreich's contention the insured's temporary coverage became permanent.

We interpret the after-acquired property section to provide up to 90 days of limited, temporary coverage, during which the insured has the opportunity

---

new property. To avoid this problem insureds would of necessity seek permanent coverage from other carriers while their temporary coverage was still in force. Only after obtaining permanent coverage elsewhere would they inform the original carrier of the value of their property and thereby terminate their temporary coverage.

During oral argument, Genesis was not able to explain to this court's satisfaction how this specific ground for termination made practical business sense. However, Genesis does not seek to enforce this ground for termination of coverage, even though Kornreich did report the values of the newly acquired properties shortly after they were purchased. Instead Genesis relies on the expiration of the 90-day outside term of coverage. Accordingly, we only observe this clause introduces unnecessary ambiguity into the policy. Furthermore, we emphasize we need not and do not address the issue whether this clause would bar recovery for a loss occurring after an insured reported the value of newly acquired property but before expiration of the maximum time period provided for coverage under the after-acquired property section of the policy.

[6]The policy in *Sherman* stated in pertinent part:

"a.   Newly Acquired or Constructed Property

"(1)   You may extend the insurance that applies to [the] Building to apply to:

"   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(b)   *Buildings you acquire* at locations, other than the described premises, intended for:

"(i)   Similar use as the building described in the declarations; or

"   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(3)   *Insurance under this Extension for each newly acquired or constructed property will end when any of the following first occurs:*

"(a)   This policy expires.

"(b)   *30 days expire after you acquire or begin to construct the property*; or

"(c)   You report values to us." (*Sherman Intern. Corp.* v. *Liberty Mut. Ins. Co.*, *supra*, 922 F.2d at p. 730.)

to seek permanent coverage for the new buildings from either Genesis or some other insurance company. Coverage for newly acquired property does not automatically become permanent once minimum conditions are satisfied. Therefore, by failing to secure permanent coverage within this 90-day extension period, Raintree's apartments were no longer insured.

Kornreich's interpretation would mean Genesis would have to automatically and permanently insure all newly acquired property of a similar type, even though it was much more extensive and valuable than the property on which the Policy was originally written. If, for example, the policy originally covered one apartment building and the insured acquired 100 more of a similar type, Genesis would find itself having its exposure increased a hundredfold without any possibility of reviewing the relative risk of these newly acquired buildings or even considering the company's capacity to take on this much new business. Thus, Kornreich's interpretation appears inconsistent with sound business practice as well as the plain language of the insurance contract.

## II.   *Automobile and Stock Insurance Policies Are Inapposite to Real Property Insurance Policies.*

Kornreich relies heavily on an analogy to automatic "newly acquired" property clauses in automobile insurance and merchandise stock insurance policies. However, the analogy fails to hold up.

The most common type of newly acquired property clause appears in automobile insurance policies. This clause permits the insured to add a newly acquired automobile to an existing policy for the remaining policy term, after meeting certain conditions.[7] In an emerging trend reflected in many policies, insurance companies have extended the reporting period for

---

[7]The automatic insurance clauses generally read as follows:

" 'If the named Insured who is the owner of the automobile acquires ownership of another automobile, such insurance as is afforded by this policy applies also to such other automobile as of the date of its delivery to him, subject to the following additional conditions: (1) if the Company insures all automobiles owned by named Insured at the date of such delivery, insurance applies to such other automobile, if it is used for pleasure purposes or in the business of the named Insured as expressed in the declarations, but only to the extent applicable to all such previously owned automobiles; (2) if the Company does not insure all automobiles owned by the named Insured at the date of such delivery, insurance applies to such other automobile, if it replaces an automobile described in this policy and may be classified for the purpose of use stated in this policy, but only to the extent applicable to the replaced automobile; (3) the insurance afforded by this policy automatically terminates upon the replaced automobile at the date of such delivery; and (4) this agreement does not apply (a) to any loss against which the named Insured has other valid and collectible insurance, nor (b) unless the named Insured notifies the Company within ten days following the date of delivery of such other automobile, nor (c) except during the policy period, but if the date of delivery

obtaining permanent insurance from 10 to 30 days in order to allow the insurer to adjust the premium accordingly to reflect the change in risk assumed. (12 Couch on Insurance, *supra*, § 45:182, p. 461.)

From the standpoint of insurance companies, ". . . the additional free coverage is justified by the likelihood that the insured will purchase insurance on the additional or newly acquired automobile from the present insurer rather than another insurance company." (*Velderrain* v. *Progressive Casualty. Ins. Co.* (1986) 177 Cal.App.3d 246, 249 [223 Cal.Rptr. 1].) The rationale underlying these provisions is to provide continuous coverage for the newly acquired automobile. (12 Couch on Insurance, *supra*, § 45:184, p. 463.) As such, these clauses confer "automatic insurance," in which the operation of the policy extends coverage to the newly acquired automobile. (*Id.*, § 45:181, p. 459.) Even so, insureds of after-acquired goods are often required to first notify the insurer of the acquisition to procure coverage.[8] (1 Couch on Insurance (2d ed. 1984) § 6:27, pp. 494-495.)

However, these "after-acquired automobile" policy provisions differ in several ways from the "after-acquired" apartment building coverage in this policy. To begin with, the automobile policies fail to contain the language terminating the promised coverage after expiration of a certain period found in the Genesis policy. Rather, they expressly extend the coverage until the end of the policy subject to a rate adjustment based on the nature of the vehicle, its intended usage, and a limited set of like factors. Second, there is far less risk in automatically extending permanent coverage to a newly acquired car than to a newly acquired building. The value of a given model of automobile is easier to determine than a multiple unit apartment building in Arkansas. The product being insured is standard and the people who could cause an insurable event are limited primarily to the owner and his or her family. On the other hand, one apartment building can be a firetrap; another can be nearly fireproof. One can contain good, responsible tenants; another can be filled with "fire bugs." These differences demonstrate why it makes little sense to assume the "after-acquired buildings" provision in this policy is identical in purpose and scope to the "after-acquired vehicles" clause in the typical automobile insurance policy.

---

of such other automobile is prior to the effective date of this policy the insurance applies as of the effective date of this policy, nor (d) unless the named Insured pays any additional premium required because of the application of this insurance to the said automobile.' " (12 Couch on Insurance, *supra*, (2d ed. 1981) § 45:182, pp. 460-461.)

[8]One such after-acquired property clause extends coverage as follows: " 'It is further understood and agreed that should any car trust agreement be satisfied and the insurance on such rolling stock expire during the term of this policy, such rolling stock shall be added thereto at the expiration of the insurance and the proper pro rata premium paid on it.' " (*Hulen* v. *American Cent. Ins. Co.* (Tex. Comm'n App. 1932) 45 S.W.2d 570, 572.)

After-acquired property clauses employed in policies insuring a stock of goods or merchandise to be sold and replenished likewise offer no comfort to Kornreich. Stock transactions are instantaneous and often temporary. Unlike the justification for stock insurance, apartment insurance does not involve a problem of "detail work" incident to reporting numerous individual purchases. (But see *Hulen v. American Cent. Ins. Co., supra,* 45 S.W.2d 570, 572 [reasoning that the reports, policies, binders, and endorsements for rolling stock were so numerous and instantaneous that an after-acquired property clause must be interpreted to provide continuous insurance].) Because the purchase of an apartment building is generally a more critical and lengthy process, the justification for automatic permanent stock insurance is inapplicable.

More importantly, just as was true of "after-acquired vehicle" provisions these "after-acquired merchandise" policies clearly provide for permanent coverage of the newly acquired (and continually changing) merchandise for the remainder of the policy period. Those policies do not, as this one does, provide that coverage for after-acquired property expires at the end of 30 days or 90 days or some other designated period. Permanent coverage is clearly established, without question, interpretation, or inference. Here, in contrast, Kornreich asks us to infer from some very general language the temporary coverage automatically became permanent as to any amount of later-acquired property. As discussed above, the language of this insurance contract is not reasonably susceptible to this interpretation.

DISPOSITION

The judgment is affirmed. Respondent to recover its costs on appeal.

Lillie, P. J., and Woods, J., concurred.