[No. F017860. Fifth Dist. Jan. 24, 1994.]

CHARLES S. NICHOLSON III, Plaintiff and Appellant, v.
JOHN W. LUCAS et al., Defendants and Respondents.

1660

## COUNSEL

McCarthy & Leonard, Brian McCarthy and John Leonard for Plaintiff and Appellant.

Clifford, Jenkins & Brown and J. Craig Jenkins for Defendants and Respondents.

## OPINION

**BUCKLEY, J.**—Charles S. Nicholson III, D.D.S., appeals from the judgment of dismissal following the grant of summary judgment in favor of respondents John W. Lucas, D.D.S., Bakersfield Memorial Hospital, C. Larry Carr and Charles S. Ashmore, M.D., on appellant's third amended complaint which alleged malicious prosecution of an administrative proceeding. Appellant contends the bases upon which the trial court granted summary judgment were erroneous and argues there are triable issues of fact as to each element of this cause of action. We will affirm, concluding the administrative proceedings initiated were based upon probable cause.

### STATEMENT OF FACTS

Appellant is a dentist practicing in Bakersfield, California. He applied for appointment to the medical and dental staff of Bakersfield Memorial Hospital and was awarded provisional staff membership. Provisional staff members require observation by designated proctors in the operation of clinical privileges. At no time prior to September 22, 1987, did appellant have privileges to perform procedures other than dental extractions without the presence of a proctor.

Prior to 1987, it came to the attention of the surgery supervisory committee that appellant was receiving unfavorable proctor reports of his surgeries. Dr. Ashmore, chairman of that committee, talked with others on the medical staff who apprised him of excessive length of surgeries performed, excessive blood loss by patients and the necessity of followup or repeat surgeries upon some patients. It was decided that an outside consultant should review the charts of some patients to determine the quality and propriety of care

given by appellant. Additionally, it was decided that the section of dentistry of Bakersfield Memorial Hospital should review and pass on the issue of appellant's permanent privileges.

On July 30, 1987, at a special meeting of the section of dentistry of the medical staff, a motion was passed to deny appellant privileges for all surgical procedures except teeth extractions. On August 25, 1987, at a regular meeting of the department of surgery, a motion was passed to accept the recommendation of the section of dentistry regarding deletion of appellant's privileges. On September 22, 1987, at a regular meeting of the surgical supervisory committee, it was reported that the hospital's board of directors approved this recommendation. By certified letter dated September 23, 1987, appellant received notice of this decision and of his right under the hospital bylaws to a judicial review committee hearing.

Appellant requested a hearing, which was held between December 1, 1987, and April 6, 1988. On April 14, 1988, the judicial review committee determined "the Medical Executive Committee did not *meet* their burden of proof by a preponderance of the evidence sufficient to justify deletion of all of Dr. Nicholson's surgical privileges, other than dental extractions." (Italics original.) However, the committee further stated it did not recommend that "full clinical privileges be granted" to appellant and recommended that appellant "be continued on proctoring for all surgeries, other than dental extractions."

This legal action ensued. Appellant's third amended complaint states a single cause of action for malicious prosecution.[1] Appellant alleges that on September 23, 1987, the defendants maliciously instituted and prosecuted a "disciplinary administrative proceeding" when "said Defendants, and each of them, suspended Plaintiff's medical staff privileges at DEFENDANT HOSPITAL."

After answering and alleging various affirmative defenses, respondents filed a motion for summary judgment. In relevant part, respondents supported the motion with the declarations of Larry Carr, Dr. Ashmore, Dr. Lucas, Donald A. Goldman, Dr. Katz and Dr. Fontanesi. Respondents also submitted the hospital's bylaws and minutes of the various committee meetings during which appellant's performance was discussed.

Appellant opposed, submitting, in relevant part, his declaration, a letter from Dr. Mainous, and excerpts from the testimony of Drs. Golec, Leonard and Siegal at the judicial review committee hearing.

---

[1]Previous complaints and their disposition are not part of the record.

The motion was submitted on November 6, 1991. On January 7, 1992, the trial court granted summary judgment on the following grounds: "I. No administrative proceeding was initiated by Defendants against Plaintiff . . . . [¶] II. Advice of Counsel establishes probable cause and this defeats an action for malicious prosecution. . . ."

This appeal followed.

## DISCUSSION

■ The trial court based its decision to grant summary judgment on two grounds: (1) respondents did not initiate an administrative proceeding against appellant and (2) respondents established the affirmative defense that "[a]dvice of counsel establishes probable cause and this defeats an action for malicious prosecution." However, review of the record reveals that even if this court accepts appellant's argument that the grounds upon which the court granted judgment were incorrect, appellant never rebutted respondents' showing that the September 22, 1987, determination to deny him surgical privileges was based upon probable cause.[2] A decision which is correct on any legal theory will be affirmed. (*Snider* v. *Snider* (1962) 200 Cal.App.2d 741, 756 [19 Cal.Rptr. 709].) Therefore, because respondents negated an essential element of appellant's action and appellant failed to present any evidence which would create a triable issue of material fact on this point, the judgment must stand.

*Applicable legal principles.*

■ A malicious prosecution action may be based on a proceeding before an administrative board or agency. (*Hardy* v. *Vial* (1957) 48 Cal.2d 577, 580-581 [311 P.2d 494, 66 A.L.R.2d 739].) To prevail, the complaining party must establish that (a) the proceedings were " 'initiated (i) without probable cause to believe that the charge or claim on which the proceedings are based is well founded, and (ii) primarily for a purpose other than that of securing appropriate action by the board, and (b) the proceedings have terminated in favor of the person against whom they are brought.' " (*Id.* at p. 580, quoting Rest. Torts, § 680.)

It is well established that the Court of Appeal reviews the grant of summary judgment de novo. (*Saldana* v. *Globe-Weis Systems Co.* (1991) 233 Cal.App.3d 1505, 1515 [285 Cal.Rptr. 385].) "For purposes of summary judgment proceedings, if the defendants 'conclusively negate a necessary

---

[2]This issue was raised in the motion for summary judgment and addressed by respondents on appeal. Accordingly, it is properly before this court.

element of the plaintiff's case or establish a complete defense and thereby demonstrate that under no hypothesis is there a material factual issue which requires the process of a trial,' they are entitled to summary judgment." (*Walsh* v. *Bronson* (1988) 200 Cal.App.3d 259, 264 [245 Cal.Rptr. 888].) Thus, if respondents "conclusively establish" they had probable cause to institute the proceeding giving rise to the action for malicious prosecution, they are entitled to summary judgment in their favor. (*Ibid.*)

When there are no disputed questions of fact about respondents' preparation and knowledge prior to the institution of the proceeding giving rise to the malicious prosecution claim, "the existence or absence of probable cause has traditionally been viewed as a question of law to be determined by the court, rather than a question of fact for the jury." (*Sheldon Appel Co.* v. *Albert & Oliker* (1989) 47 Cal.3d 863, 875 [254 Cal.Rptr. 336, 765 P.2d 498]; *Walsh* v. *Bronson, supra,* 200 Cal.App.3d at p. 265.) In *Sheldon Appel Co.* v. *Albert & Oliker*, the Supreme Court explained the rationale supporting this rule as follows: "To avoid improperly deterring individuals from resorting to the courts for the resolution of disputes, the common law affords litigants the assurance that tort liability will not be imposed for filing a lawsuit unless *a court* subsequently determines that the institution of the action was without probable cause." (47 Cal.3d at p. 875.)

Probable cause has classically been defined as "a suspicion founded upon circumstances sufficiently strong to warrant a reasonable person in the belief that the charge is true." (*Jensen* v. *Leonard* (1947) 82 Cal.App.2d 340, 351 [186 P.2d 206]; *Kassan* v. *Bledsoe* (1967) 252 Cal.App.2d 810, 816 [60 Cal.Rptr. 799]; *Davis* v. *Local Union No. 11, Internat. etc. Elec. Workers* (1971) 16 Cal.App.3d 686, 692 [94 Cal.Rptr. 562].) "Probable cause does not depend on the actual state of the case, but rather on whether the one instigating the proceeding is possessed of knowledge, information, or facts sufficient to cause a reasonable, or a reasonably prudent, person to believe honestly that the charge is true." (6 Cal.Jur.3d, Assault and Other Wilful Torts, § 330, p. 845, fns. omitted.) This is an objective standard. (*Sheldon Appel Co.* v. *Albert & Oliker, supra,* 47 Cal.3d at p. 883; *Leonardini* v. *Shell Oil Co.* (1989) 216 Cal.App.3d 547, 567 [264 Cal.Rptr. 883].) Mere proof of favorable termination does not create a conflict on the issue of probable cause, nor does proof of the existence of malice. (*Leonardini, supra,* 216 Cal.App.3d at p. 567; *Murdock* v. *Gerth* (1944) 65 Cal.App.2d 170, 179 [150 P.2d 489].)[3] The court is to base its determination whether there existed probable cause to institute the challenged proceedings on those facts known to the defendant at the time the underlying action was instituted. (*Williams* v. *Coombs* (1986) 179 Cal.App.3d 626, 632, fn. 4 [224 Cal.Rptr. 865].) As

[3]Appellant's assertions to the contrary are incorrect.

explained in *Sheldon Appel Co.* v. *Albert & Oliker, supra*, 47 Cal.3d at page 883, ". . . if the trial court concludes that, on the basis of the facts known to the defendant, the filing of the prior action was objectively reasonable, the court has necessarily determined that the malicious prosecution plaintiff was not subjected to an unjustified lawsuit."[4]

*Administrative proceedings were initiated.*

■ Denial of a doctor's right to practice his profession at a hospital, "either by the termination of existing staff privileges or by the denial of an initial application for such privileges" requires a "fair procedure which affords the doctor an opportunity to answer the 'charges' upon which his exclusion rests." (*Westlake Community Hosp.* v. *Superior Court* (1976) 17 Cal.3d 465, 468 [131 Cal.Rptr. 90, 551 P.2d 410].) ■ In its September 23, 1987, letter to appellant, hospital stated the September 22, 1987, decision to accept the recommendation to "delete all proctored privileges previously assigned you other than dental extractions" was a "denial of requested clinical privileges," entitling him to a hearing before the judicial review committee. According to the hospital's bylaws, unless appellant challenged this determination by filing a written request for a hearing within 15 days of receipt of notice, it would become "final and binding." Moreover, the minutes from the surgical supervisory committee meeting held September 22, 1987, provide that a letter of notice was sent to appellant "which starts the 15-day *appeal process* . . . ." (Italics added.) Hence, for purposes of this discussion, we agree with appellant's assertion that the September 22, 1987, decision to delete his privileges constituted the initiation of an administrative proceeding.[5]

*Probable cause supported the initiation of administrative proceedings.*

■ The declarations of Drs. Lucas, Ashmore,[6] Katz, and Fontanesi as well as the proffered section of Dr. Ashmore's deposition testimony and the minutes of the various meetings at which appellant's performance was considered demonstrate that a thorough investigation was undertaken prior

---

[4]There are no published California cases specifically discussing what constitutes probable cause where the malicious prosecution claim was based upon an administrative proceeding. Thus, the rules discussed, *ante*, were formulated in the context of actions arising out of the filing of civil lawsuits. As the Supreme Court found the malicious institution of an administrative proceeding to be indistinguishable from a maliciously instituted civil or criminal action (*Hardy* v. *Vial, supra*, 48 Cal.2d at pp. 580-581), we apply these rules to the instant case.

[5]We note in passing that acceptance of this date as the initiation of proceedings precludes reliance upon counsel's advice as establishing probable cause as counsel was not consulted until after notice of revocation of privileges was sent to appellant.

[6]Only those portions of the declarations of Drs. Lucas and Ashmore which were not subject to proper evidentiary objection raised below will be considered.

to deletion of appellant's privileges, including consultation with an outside orthognathic expert, and that the initial decision to delete his privileges was based upon substantial and legitimate concerns with excessive operating room times and excessive blood loss.

Dr. Lucas declared that on July 16, 1987, he attended a special meeting of the section of dentistry. The purpose of the meeting was "peer review of plaintiff's performance to date." At the meeting "the charts and records pertaining to plaintiff's patients" were studied. On July 30, 1987, he served as chairman of another meeting of the section of dentistry. "The business conducted was a continuation of the review of plaintiff's performance." Dr. Lucas also declared that appellant's "pattern of practice had demonstrated, in my opinion, a departure from general and basic medical and surgical concepts for quality patient care."

The minutes of the July 16, 1987, meeting state that the committee reviewed seven patient charts and a completed report from John Lytle, M.D., concerning these cases.

The minutes of the July 30, 1987, meeting of the section of dentistry indicate the only order of business was a continuation of the review of appellant's performance. The minutes state: "The committee had before it 23 charts including 21 that were previously reviewed and summarized for the committee plus 2 charts, one of which had been impounded and a second which is a patient just discharged a day ago. Also present for the committee's review were X-rays and proctor forms pertaining to several cases." The committee reviewed the summary of each patient chart, the proctor reports and "where any questions occured [sic]," the actual patient chart. The committee raised the following eight points of concern with appellant's performance:

"1. There were numerous occasions of inadequate documentation noted in the charts.

"2. This oral surgeon consistently experienced large volumes of blood loss while performing maxillary and mandibular procedures.

"3. It appears that the surgical expertise and technical skills expected seem to be lacking for the procedures being performed.

"4. The intra-operative complication rate appears to be outside of norms expected for the procedures being performed.

"5. There were numerous examples of excessive duration of surgery time for the procedures performed.

"6. There is an apparent inability to handle complications that occur during surgery as evidenced by instances of patients being returned to surgery because of a failed procedure. It was expressed that a contributing factor appears to be inadequate planning and preparation or technique.

"7. There were several instances of repeated surgery.

"8. There is documentation in the written record and dictation of the physician concerned evidencing a difficulty in each area of oral surgery."

In his deposition testimony, Dr. Charles Ashmore states that consultation with an outside expert (Dr. Lytle) to review appellant's performance had been made prior to making the decision to delete his privileges because "[a]nytime we feel that there is a major problem going on, especially in an area where we do not feel there is a great deal of local expertise, we always ask for an outside review. We feel it's much more impartial to obtain a review from someone outside the hospital than from someone directly involved with the functions of the hospital."

While respondents did not include Dr. Lytle's report in support of their motion, appellant submitted into evidence a portion of testimony taken at the judicial review hearing in which one of his experts, Dr. Siegel, read portions of Dr. Lytle's report and disagreed with Dr. Lytle's conclusions about appellant's performance. It is clear from the sections read by Dr. Siegel that Dr. Lytle's assessment of appellant's performance in the cases he reviewed was quite negative. For example, in connection with chart number two, Dr. Lytle wrote that appellant's performance was "[w]oefully below the standard of care," and "[f]alls in range of the type of procedure being done by a first year resident."

Respondents also submitted the declarations of two medical experts not connected with the hospital. Dr. Ronald Katz, a board certified anesthesiologist, declared that he reviewed the hospital charts for each of the patients whose charts were reviewed by the section of dentistry prior to the judicial review committee hearing. It was his opinion that the charts demonstrated "there were substantial and repeated questions of excessive operating room times employed by Dr. Nicholson during his surgical procedures and excessive blood loss experienced by Dr. Nicholson's patients." He also identified the same eight issues of concern as were raised by the section of dentistry. Dr. Katz declared, "It is my opinion that Dr. Nicholson did not conform to the applicable standard of care in terms of excessive operating room times and excessive blood loss in his surgical patients."

Dr. Robert Fontanesi, D.D.S., declared he has been an oral and maxillofacial surgeon since 1969. Since 1982, he has limited his practice to oral and

maxillofacial surgery. He also reviewed the patients' charts whose medical cases were considered at the judicial review committee hearing. It was his opinion as an oral surgeon, "that from the aforementioned patients' charts that there were substantial and repeated questions of excessive operating room times employed by Dr. Nicholson during his surgical procedures and of excessive blood loss experienced by Dr. Nicholson's patients." Like Dr. Katz, he declared that, in his opinion, "Dr. Nicholson did not conform to the applicable standard of care in terms of excessive operating room times and excessive blood loss in his surgical patients."

The foregoing evidence demonstrates that hospital staff reviewed and discussed numerous patient charts and proctor reports, noting eight specific areas of concern, and obtained the opinion of an outside medical expert prior to making the September 22, 1987, decision. Two experts, a medical doctor and an oral surgeon, declared the patient charts and proctor reports revealed substantial questions with appellant's performance and that, in their opinions, appellant's performance did not meet generally accepted standards of medical care.[7] Respondents clearly established the September 22, 1987, determination was not arbitrary and capricious, but was taken only after substantial investigation and considerable deliberation.

■ Appellant's opposition does not raise a triable issue of fact as to the existence of probable cause. He argues "the question of fact is whether the medical records (patient charts, proctor reports, etc.) were such as to engender a reasonable belief that a suspension or deletion of Appellant's oral surgery privileges was warranted." This argument is without merit. An issue of fact as to the existence of probable cause is raised only if the circumstances surrounding the making of the determination are disputed. (*Walsh* v. *Bronson*, *supra*, 200 Cal.App.3d at p. 265.) Appellant does not dispute the fact his performance was repeatedly discussed prior to the September 22, 1987, decision, nor does he refute respondents' evidence demonstrating that patient charts and proctor reports were reviewed and that an outside expert was consulted prior to the September 22, 1987, decision. While his declaration, excerpts of the testimony of Drs. Golec, Siegel, and Leonard from the judicial review hearing and Dr. Mainous's letter dispute the merits of the conclusion reached by the surgical committee, they do not dispute respondents' preparation and knowledge prior to the September 22, 1987, decision. There is no controversy "about what defendant did or didn't do, or about what he knew or didn't know. . . . [T]he question of whether those facts, including their reasonableness, gave rise to probable cause was a legal one for the court." (*Williams* v. *Coombs*, *supra*, 179 Cal.App.3d at pp. 637-638.)

---

[7]Although it appears the two doctors were not consulted prior to the initiation of administrative proceedings, their declarations substantiate the reasonableness of the action taken by respondents.

■ Appellant's evidence does not support the legal conclusion that the September 22, 1987, decision to delete his privileges was objectively unreasonable, for even some of appellant's experts found areas of concern with appellant's performance. For example, Dr. Siegel testified that "patient two" should not have required four units of blood and that four hours for the surgery "is a bit long." He also testified that appellant's documentation "should be cleaner." He admitted there were deficiencies in appellant's performance, but concluded these deficiencies do not "warrant dismissal."

Dr. Mainous's letter stated that in his opinion in each chart he reviewed appellant did meet the "standard of care"; however, he too noted several instances where appellant's performance could have been improved. As probable cause requires reasonable "suspicion" of the veracity of the charges, not absolute certainty, these statements actually support the conclusion that the initial decision was based upon legitimate concerns with appellant's performance.

Conspicuously absent from the testimony of any of appellant's medical experts is any statement that the initial September 22, 1987, determination was arbitrary or unreasonable. Rather, appellant's medical experts simply reached different conclusions as to whether the deficiencies in his performance necessitated deletion of his privileges. The mere fact that medical minds may differ as to what constitutes acceptable levels of proficiency in a given situation does not render unreasonable an initial determination that performance was not acceptable.

The instant case is directly comparable to the situation in which there existed enough evidence to charge an individual with a crime or file a civil complaint against him but not enough evidence to convict or effect judgment against him. Favorable termination does not establish lack of probable cause nor does it raise such an inference. (*Centers* v. *Dollar Markets* (1950) 99 Cal.App.2d 534, 541 [222 P.2d 136].) Thus, contrary to appellant's repeated assertion, the mere fact that the judicial review committee ultimately reversed the denial of privileges does not establish that the initial accusation was lacking in probable cause, nor does it raise such a presumption.

Appellant also relies upon a letter written by Dr. Lucas to the department of surgery dated April 7, 1988, arguing it essentially concedes that the charges should not have been brought. This assertion is without support. The letter does not address the propriety of the initial decision to delete appellant's privileges. Rather, it merely states that the current system of "credentialling, monitoring, granting of privileges, and disciplinary action in regards to oral surgeons" needs "updating." Dr. Lucas suggests a surgical team be

formed in order to prevent the "negative aspects to the doctor, hospital, and community" which would arise if appellant's privileges were suspended or terminated. There is no indication in this letter that denial of appellant's privileges was not warranted. In fact, Dr. Lucas explicitly writes, "This letter should not be received as an intent to subvent [*sic*] or undermine the decision reached by the judiciary committee whatever it may be . . . ."

In sum, appellant did not submit any evidence contradicting hospital's account of the investigation undertaken by it prior to its September 22, 1987, decision or the medical evidence upon which the decision was based. Thus, appellant did not raise a triable issue of fact as to the underlying events upon which the probable cause determination is based. Moreover, appellant did not submit any evidence negating the *reasonableness* of the September 22, 1987, decision that appellant's performance did not meet generally applicable standards of medical care; none of appellant's experts testified the original determination was unreasonable, arbitrary or without any factual basis.

█ Finally, it must be recognized that malicious prosecution is a disfavored cause of action; the elements of the tort "have 'historically been carefully circumscribed so that litigants with potentially valid claims will not be deterred from bringing their claims to court by the prospect of a subsequent malicious prosecution claim.' " (*Abraham* v. *Lancaster Community Hospital* (1990) 217 Cal.App.3d 796, 825 [266 Cal.Rptr. 360], quoting *Sheldon Appel Co.* v. *Albert & Oliker, supra,* 47 Cal.3d at p. 872.)
█ There is also an obvious public policy argument against setting an unduly high standard of "probable cause" for the denial or revocation of hospital privileges. Here, through its various committees, hospital undertook repeated review of appellant's performance, specifically considering numerous patient charts and proctor reports and identifying eight specific areas of concern. Hospital also obtained the report of an outside consultant, not affiliated with the hospital, prior to making the determination to deny privileges. Were the focus of the propriety of a hospital's actions placed on the final result of the proceedings initiated, rather than their inception, it would have a devastating effect upon a hospital's willingness to make the hard choices necessary to protect patient safety. Such a finding would leave medical facilities and their personnel open to malicious prosecution actions in almost every instance where the initial denial or suspension of a practitioner's privileges was not fully upheld upon further hearing. This would certainly lead to a decrease in the willingness of medical facilities to take any action against practitioners, even though substantial concerns with their performance have arisen. It is for sound policy reasons that courts have focused on the activities of respondents at the time proceedings were initiated. We conclude as a matter of law respondents' actions were objectively reasonable and, thus, were supported by probable cause.

## Disposition

The judgment is affirmed. Costs are awarded to respondents.

Stone (W. A.), Acting P. J., and Dibiaso, J., concurred.