74 Cal.Rptr.2d 385 (1998)
63 Cal.App.4th 907
Stanton G. AXLINE, M.D., Plaintiff and Appellant,
v.
SAINT JOHN'S HOSPITAL AND HEALTH CENTER, Defendant and Respondent.
No. B105689.
Court of Appeal, Second District, Division Four.
May 6, 1998.
*386 Curtis & Connolly, Tom Curtis, Freeburg, Judy & Nettels and Steven J. Freeburg, Pasadena, for Plaintiff and Appellant.
McDermott, Will & Emery, Lee L. Blackman, Los Angeles, and Thomas A. Ryan, Anaheim, for Defendant and Respondent.
EPSTEIN, Acting Presiding Justice.
Appellant, Dr. Stanton G. Axline, sued Saint John's Hospital (the Hospital) when it denied his application to become a member of the medical staff. The Hospital's demurrer was sustained without leave to amend upon the trial court's conclusion that Dr. Axline had signed a release that effectively shielded the Hospital from liability. The trial court also concluded that Dr. Axline had failed to plead the elements of the malicious prosecution tort. We conclude the release does not apply to this case. We also conclude that Dr. Axline properly pled a claim for malicious *387 prosecution. We therefore reverse the judgment of dismissal.

FACTUAL AND PROCEDURAL SUMMARY
On appeal from the sustaining of a demurrer without leave to amend, we assume the truth of all properly pleaded allegations in the complaint. (Silberg v. Anderson (1990) 50 Cal.3d 205, 210, 266 Cal.Rptr. 638, 786 P.2d 365.) The following summary is taken from the second amended complaint, which is the charging pleading.
Dr. Axline applied to join the Hospital's medical staff. He was required to sign, and did sign, a release which provides in part: "In filing this application for membership on Saint John's Medical Staff, I agree to be bound by the Bylaws of the Hospital and the Bylaws, Rules, and Regulations of the Medical Staff, the Ethical and Religious Directives for Catholic Health Facilities, and the applicable state and federal laws, in connection with all matters relating to the processing of the application and as a member if I am appointed to the Medical Staff. [¶] By applying for appointment to the Medical Staff I hereby signify my willingness to appear for interviews and before committees in regard to my application, and I hereby release from liability, to the fullest extent permitted by law, all representatives of the Hospital and its Medical Staff for their acts performed in connection with evaluating my application and my credentials and qualifications. [¶] I hereby further authorize and consent to the communication of information and documents between this Hospital, or its Medical Staff, and other medical staffs, medical societies, medical schools or training programs, professional associations, professional liability insurance companies, and licensing authorities in jurisdictions in which I have trained, resided, or practiced, for the evaluation of my professional training, experience, character, conduct, judgment, and ethical qualifications and I hereby release from liability, to the fullest extent permitted by law, this Hospital and its Medical Staff and other individuals and organizations for so doing. [¶].... [¶] Evaluation and inquiries into my professional competence and qualifications shall be accomplished in a professional manner. I shall be afforded a fair procedure in the event that action on this application, or with respect to my privileges, is adverse. Such procedure shall include reasonable notice of the reasons for such action, and opportunity for rebuttal and impartial determination, as is more specifically set forth in the bylaws of the medical staff." (Emphasis added.)
Dr. Axline alleges several improprieties in the procedures followed by the Hospital in processing his application. He asserts the Hospital violated its bylaws on multiple occasions and failed to provide him an opportunity to address allegations brought against him. He does not allege improper communication between the Hospital and any other party. Based on the alleged violations, Dr. Axline sued for intentional interference with practice of profession, intentional interference with prospective economic advantage, breach of fiduciary duty, breach of contract, and malicious prosecution.
In its demurrer, the Hospital argued that by signing the release Dr. Axline gave up all rights against the Hospital in connection with his application to join the medical staff. The court sustained the demurrer without leave to amend. The court found: "There are insufficient allegations to overcome the bar by virtue of plaintiffs release of moving party from liability for Peer Review Activities in [plaintiffs] application to Medical Staff of moving party/Hospital. There are insufficient allegations of malice to avoid the bar. As to the 5th cause of action [malicious prosecution]: the elements of this cause are not set forth."

DISCUSSION

A
"When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. The burden of proving such reasonable *388 possibility is squarely on the plaintiff." (Blank v. Kirwan (1985) 39 Cal.3d 311, 318, 216 Cal.Rptr. 718, 703 P.2d 58, internal citations omitted.)
According to the Hospital, Dr. Axline released all claims against it so that the Hospital could be liable only if malice were alleged. The Hospital appears to argue both that the release is valid because it is coextensive with the statutory immunities provided in Civil Code sections 43.7, 43.8, and 47, and that the release provides protections greater than those provided in the statutory immunities. We first consider whether the statutory immunities shield the Hospital from liability. We next discuss whether the release provides greater protection.
Civil Code section 43.7, subdivision (b), provides: "There shall be no monetary liability on the part of, and no cause of action for damages shall arise against, any ... committee of a professional staff of a licensed hospital (provided the professional staff operates pursuant to written bylaws that have been approved by the governing board of the hospital), for any act or proceeding undertaken or performed within the scope of the functions of the committee which is formed to maintain the professional standards of the society established by its bylaws, or any member of any peer review committee whose purpose is to review the quality of medical... services rendered by physicians ... for any act or proceeding undertaken or performed in reviewing the quality of the medical... services rendered by physicians ... if the professional society, committee, or board member acts without malice, has made a reasonable effort to obtain the facts of the matter as to which he, she, or it acts, and acts in reasonable belief that the action taken by him, her, or it is warranted by the facts known to him, her, or it after the reasonable effort to obtain facts."
Subdivision (e) of the same statute provides: "This section shall not be construed to confer immunity from liability on any ... hospital. In any case in which, but for the enactment of the preceding provisions of this section, a cause of action would arise against a ... hospital, the cause of action shall exist as if the preceding provisions of this section had not been enacted." (Emphasis added.)
Under the plain terms of the statute, section 43.7 provides conditional immunity for individuals, not hospitals. Therefore, Hospital cannot invoke this section as a shield to liability. (See Westlake Community Hosp. v. Superior Court (1976) 17 Cal.3d 465, 481, 131 Cal.Rptr. 90, 551 P.2d 410 ["[D]efendants recognize that section 43.7 of the Civil Code... provides no privilege at all for the hospital itself, ..."].)
Civil Code section 43.8 provides absolute immunity to persons who "communicate certain information to medical staff committees." (Alexander v. Superior Court (1993) 5 Cal.4th 1218, 1225, fn. 6, 23 Cal.Rptr.2d 397, 859 P.2d 96.) It states in part: "[T]here shall be no monetary liability on the part of, and no cause of action for damages shall arise against, any person on account of the communication of information in the possession of such person to any hospital ... [or] peer review committee, ..." (Emphasis added.)
The Legislature did not specifically exclude hospitals from the scope of Civil Code section 43.8, as it did in section 43.7. Given the express language, the Hospital does not explain how it can fall within the definition of "any person." But even if somehow it could, the alleged misconduct does not relate to the communication of information to a hospital or to a peer review committee. Thus, the immunity provided in section 43.8 for "the communication of information" is not triggered.
The Hospital also directs our attention to Civil Code section 47, subdivisions (b) and (c), the so-called "litigation privilege." (Edwards v. Centex Real Estate Corp. (1997) 53 Cal.App.4th 15, 28, 61 Cal.Rptr.2d 518.) The "litigation privilege is intended to encourage parties to feel free to exercise their fundamental right of resort to the courts for assistance in the resolution of their disputes, without being chilled from exercising this right by the fear that they may subsequently be sued in a derivative tort action arising out of something said or done in the context of the litigation." (Id. at p. 29, 61 Cal.Rptr.2d 518.) Section 47, subdivision (b) protects publications or broadcasts that occur in (1) a *389 legislative proceeding; (2) a judicial proceeding; (3) another official proceeding authorized by law; and (4) certain other special proceedings of a civil nature. (Civ.Code, § 47, subd. (b); Alexander v. Superior Court, supra, 5 Cal.4th at p. 1225, fn. 6, 23 Cal. Rptr.2d 397, 859 P.2d 96.)
The privilege in Civil Code section 47, subdivision (c) applies to "a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information...." For example, a communication by an employer to employees concerning the reason for an employee's forced retirement is protected under this subdivision. (Deaile v. General Telephone Co. of California (1974) 40 Cal.App.3d 841, 847, 115 Cal.Rptr. 582 [construing former § 47, subd. (3), a predecessor to § 47, subd. (c)].)
Civil Code section 47, subdivision (b) does not apply in this case because the improprieties alleged by Dr. Axline do not concern a publication made in an official proceeding. Similarly, section 47, subdivision (c) does not apply because the improprieties alleged do not concern a communication at all.
The Hospital correctly points out that the peer review process is important and merits protections. (See Clarke v. Hoek (1985) 174 Cal.App.3d 208, 220, 219 Cal.Rptr. 845.) That is why the Legislature carved out immunities protecting members of peer review committees and ensuring a measure of confidentiality for their reports. (Id. at pp. 220-221, 219 Cal.Rptr. 845.) Whether this immunity should be extended to hospitals themselves is for the Legislature to decide, and it has. We cannot add to or detract from what it has done.[1]
Nor has the Hospital acquired greater protection by means of its release. The release tracks the Civil Code.[2] Consistent with section 43.7, Dr. Axline released "representatives of the Hospital and its Medical Staff for their acts performed in connection with evaluating my application...." Just as the Hospital is not included among those released from liability in the statute, it is not included in this contractual release contained in this application. The release also tracks the statute in applying to "Hospital and its Medical Staff and other individuals and organizations" for communication of information. (See Civ.Code, §§ 43.8 and 47, subd. (c).) The release of "representatives of the Hospital and its Medical Staff' is unambiguous, and does not include the Hospital. It follows that the Hospital is not shielded from liability in this action which focuses on improprieties in evaluating Dr. Axline's application.

B
The tort of malicious prosecution requires proof "`that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiffs, favor [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice [citations].'" (Sheldon Appel Co. v. Albert & Oliker (1989) 47 Cal.3d 863, 871, 254 Cal. Rptr. 336, 765 P.2d 498, quoting Bertero v. National General Corp. (1974) 13 Cal.3d 43, 50, 118 Cal.Rptr. 184, 529 P.2d 608.) A malicious prosecution action can be based on an administrative proceeding. (Nicholson v. Lucas (1994) 21 Cal.App.4th 1657, 1664, 26 Cal.Rptr.2d 778.)
The complaint alleges "the Executive Committee recommended to the Board of Directors *390 of the Hospital that Plaintiffs Application be denied. [¶] On or about December 12, 1991, the Hospital notified Plaintiff that the Executive Committee had made a finding adverse to him that, if ratified by the Board of Directors, would result in denial of medical staff privileges at the Hospital," and that he was entitled to request a hearing before an Ad Hoc Committee of the medical staff.... [¶] On or about January 10, 1992, Plaintiff requested a hearing to consider the Executive Committee's recommendation that his application for medical staff membership be denied."
The complaint also alleges: "The Hospital initiated formal proceedings against Plaintiff in the absence of a reasonable investigation and without probable cause, in that it failed to obtain information from Plaintiff, failed to give Plaintiff an opportunity to respond, failed to adhere to its own Bylaws and protocol regarding investigation, and acted on the basis of information which it knew to be inaccurate and incomplete. In so doing, the Hospital acted recklessly, in conscious disregard of Plaintiffs rights and with actual malice." Dr. Axline also alleges that the Hospital voluntarily dismissed all charges against him.
Under this Hospital's bylaws, "When any member or applicant receives special notice of an adverse recommendation of the Executive Committee that, if ratified by decision of the Board of [D]irectors, would involve denial of appointment, reduction in status, suspension, or denial or reduction of clinical privileges, or termination of membership, he shall be entitled, upon request, to a hearing before an ad hoc committee of the Medical Staff. If the recommendation of the ad hoc committee following such a hearing is still adverse to the affected member, he shall then be entitled, upon request, to an appellate review by the Board of Directors before a final decision is rendered."
The Hospital argues that Dr. Axline has not pled the elements of malicious prosecution because (1) it was he rather than the Hospital who initiated the formal hearing; (2) the Hospital had probable cause to hold a formal hearing; and (3) Dr. Axline did not plead malice.[3] We consider each argument seriatim.
Nicholson v. Lucas, supra, 21 Cal. App.4th 1657, 26 Cal.Rptr.2d 778, governs the first issue. In that case a hospital sent a letter informing a dentist of its decision to revoke his surgical privileges, as the hospital's committee had recommended. (Id. at p. 1666, 26 Cal.Rptr.2d 778.) Under the hospital's bylaws, the recommendation would become final unless the dentist requested a hearing. The letter itself started a "15-day appeal process.'" (Ibid.) The court held that the letter informing the dentist of the decision to "delete" his privileges "constituted the initiation of an administrative proceeding." (Ibid.) "Denial of a doctor's right to practice his profession at a hospital `either by the termination of existing staff privileges or by the denial of an initial application for such privileges' requires a `fair procedure which affords the doctor an opportunity to answer the "charges" upon which his exclusion rests.'" (Ibid., quoting Westlake Community Hosp. v. Superior Court, supra, 17 Cal.3d at p. 468, 131 Cal.Rptr. 90, 551 P.2d 410.)
The Hospital seeks to distinguish Nicholson. In that case the hospital had the burden of proof, while in this case Dr. Axline has the burden of showing that he was qualified. The procedures afforded also differ. Dr. Axline's position as an applicant differs from the position of the dentist in Nicholson who already was a staff member. But the critical element in both cases is the same. As in Nicholson, Dr. Axline requested a hearing to answer "charges" brought by a hospital so that he could respond to findings made against him. The Hospital's decision to deny privileges triggered a formal hearing process. Under Nicholson, the letter informing Dr. Axline of this decision constituted the initiation of a proceeding.
The Hospital supports its probable cause argument by pointing out that two physicians had voiced concerns about the *391 quality of care Dr. Axline provided. According to the Hospital, it was required to hold the hearing to ascertain the validity of the allegations.
The existence or absence of probable cause is a question of law to be decided by the court. (Sheldon Appel Co. v. Albert & Oliker, supra, 47 Cal.3d at p. 875, 254 Cal. Rptr. 336, 765 P.2d 498.) If the facts upon which the defendant acted are undisputed and demonstrate probable cause, the court must order a nonsuit or direct a verdict for the defendant. (Ibid.) The test is objective, requiring the court to consider the facts upon which the defendant acted. (Id. at p. 878, 254 Cal.Rptr. 336, 765 P.2d 498.) If there is a dispute concerning the defendant's knowledge, the jury may resolve that threshold question concerning what the defendant knew. (Id. at p. 881, 254 Cal.Rptr. 336, 765 P.2d 498.) The court, however, decides whether the knowledge is sufficient for probable cause. (Ibid.)
Here the Hospital's knowledge is disputed. Appellant alleged the Hospital knew the information upon which it relied, provided by the two doctors, was inaccurate and incomplete. We cannot determine on demurrer whether this allegation is true or not. Further proceedings, beyond this stage of a demurrer, are required for that purpose.
The third requirement for malicious prosecution is malice. The malice element is based on the subjective intent with which the defendant acted in initiating the prior action. (Sheldon Appel Co. v. Albert & Oliker, supra, 47 Cal.3d at p. 874, 254 Cal. Rptr. 336, 765 P.2d 498.) It normally presents a question of fact to be determined by the jury. (Ibid.) "The malice required in an action for malicious prosecution is not limited to actual hostility or ill will toward plaintiff but exists when the proceedings are instituted primarily for an improper purpose. [Citations.]" (Albertson v. Raboff (1956) 46 Cal.2d 375, 383, 295 P.2d 405, superseded on other grounds by Civ.Code, § 47, subd. (b).) "It has been pointed out that the `principal situations in which the civil proceedings are initiated for an improper purpose are those in which (1) the person initiating them does not believe that his claim may be held valid; (2) the proceedings are begun primarily because of hostility or ill will; (3) the proceedings are initiated solely for the purpose of depriving the person against whom they are initiated of a beneficial use of his property; (4) the proceedings are initiated for the purpose of forcing a settlement which has no relation to the merits of the claim.'" (Ibid., quoting Rest., Torts, § 676, com. b.)
Besides alleging malice, Dr. Axline claimed the Hospital knew the information upon which it acted was inaccurate. The effect of that allegation is that the Hospital did not believe that the claim is valid. That is a sufficient allegation of malice.

DISPOSITION
The judgment of dismissal is reversed, and the matter is remanded for further proceedings consistent when this opinion. Appellant is to have his costs on appeal.
HASTINGS and BARON, JJ., concur.
NOTES
[1] The parties dispute whether Dr. Axline's malice allegations are sufficient. If sections 43.7 and 47 of the Civil Code applied to Hospital, a showing of malice would be necessary for liability. Because we find these statutes do not apply, we need not and do not resolve this dispute.
[2] We need not consider whether a release that shields hospitals from liability in connection with processing an application would violate public policy. (See Westlake Community Hosp. v. Superior Court, supra, 17 Cal.3d at p. 472, 131 Cal. Rptr. 90, 551 P.2d 410 [holding invalid as against public policy exculpatory clause which provided: "`Each member of, or applicant to the Medical and Dental Staff, waives any right of personal redress against the Medical and Dental Staff, the Judicial Review Committee, the Governing Board, or any member thereof, for disciplinary action taken under this article.'"].)
[3] The Hospital does not argue that Dr. Axline failed to plead facts sufficient to show a favorable termination, another of the elements of malicious prosecution. Any argument on that point is waived.