[No. S026431. Oct. 14, 1993.]

SHIRLEY ALEXANDER et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
SHAIK M. SAHEB et al., Real Parties in Interest.

**COUNSEL**

Louise A. Lewis, Donald E. Werner, Girardi and Keese and James B. Kropff for Petitioners.

No Appearance for Respondent.

Early, Maslach & Price, Horvitz & Levy, David M. Axelrad and David S. Ettinger for Real Parties in Interest.

Catherine I. Hanson, Kimberly S. Davenport, Christine R. Hall, Wilbur F. Littlefield, Public Defender (Los Angeles), and John Hamilton Scott, Deputy Public Defender, as Amici Curiae on behalf of Real Parties in Interest.

**OPINION**

LUCAS, C. J.—Petitioners are plaintiffs in a medical malpractice action. Real parties in interest (defendants in the underlying action) are various physicians and the Granada Hills Community Hospital (Granada Hills or Hospital). Petitioners sought to discover from Hospital the physicians' applications and reapplications for staff privileges at Granada Hills. The trial court declined to order discovery, and petitioners sought writ relief in the Court of Appeal. That court—without affording real parties an opportunity for oral argument—filed a decision directing issuance of a peremptory writ

of mandate in the first instance, and further directing respondent court to enter an order compelling Hospital to produce the requested documents.

We conclude the Court of Appeal erred by processing the writ application under the expedited procedure authorized in Code of Civil Procedure section 1088 (see *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 [203 Cal.Rptr. 626, 681 P.2d 893] [hereafter *Palma*]), instead of the usual alternative writ procedure. We also conclude Evidence Code section 1157—which protects from discovery the "records" of a hospital's medical staff committee—bars the discovery order. Accordingly, we reverse the judgment of the Court of Appeal.

## I. *Facts and Procedure*

Petitioners Shirley Alexander and her husband, Morris Rubin, filed a complaint against real parties Dr. Shaik M. Saheb (and six other physicians) and Granada Hills.[1] They asserted Alexander was subjected to negligent medical treatment by Dr. Saheb and other physicians, and prayed for damages.

Petitioners sought discovery from Hospital consisting of, inter alia, "any and all applications" by Dr. Saheb and others for medical staff privileges at Granada Hills.[2] Hospital disclosed certain requested documents, but declined to deliver the applications for staff privileges on the ground those documents are privileged under Evidence Code section 1157.

---

[1] The action against Hospital was apparently predicated on a theory that it negligently selected and reviewed its medical staff. (See *Elam* v. *College Park Hospital* (1982) 132 Cal.App.3d 332 [183 Cal.Rptr. 156].) Shortly before oral argument in this matter, we were informed by the parties that petitioners and Hospital have entered into a settlement, and that Hospital will be dismissed from the underlying litigation. In a letter to this court dated August 18, 1993, petitioners asserted, "it appears the court order regarding discovery is moot." Thereafter we issued an order that read in part: "Despite the settlement between petitioners and Hospital, in light of the pending claims against the various named physicians, the discovery issue on which this court granted review is not moot. To the extent petitioners' letter is intended to constitute a motion to dismiss the pending cause as moot, the motion is denied."

[2] As amicus curiae for Hospital explains, "Typically, a medical staff application is a document developed by the medical staff Credentials Committee [(see *post* p. 1224)] . . . with careful attention to questions presented and words employed with the intent of eliciting a broad range of information crucial to the credentialing process. Such applications are given to the prospective applicants/reapplicants [(see *post* p. 1224)] and are returned to the medical staff [after] they have been completed. Completed applications are maintained by the medical staff committee as part of [its] permanent files. [¶] . . . . The original medical staff application supplies essential information about the applicant—where [he or she] went to school and received residency and other postgraduate training, state licensure and specialty

Petitioners unsuccessfully moved the superior court for an order directing Hospital to disclose the documents, and thereafter sought a writ of mandate in the Court of Appeal to direct the trial court to order discovery. The Court of Appeal requested opposition and advised the parties it would consider whether to grant the petition and direct that a peremptory writ of mandate issue in the first instance pursuant to *Palma, supra,* 36 Cal.3d 171. Real parties opposed the petition on the merits, and further asserted they had a right to oral argument before the court could grant relief.

Without holding oral argument, the Court of Appeal issued a decision granting the writ in the first instance. Following the holding in *Hinson v. Clairemont Community Hospital* (1990) 218 Cal.App.3d 1110 [267 Cal.Rptr. 503] (hereafter *Hinson*), the court concluded Evidence Code section 1157 protects only those documents *generated by* a medical staff committee, and does not protect documents *submitted to* a medical staff committee. The court also concluded there is no statutory or constitutional right to oral argument when a court is considering whether to issue a peremptory writ in the first instance. We granted review to address both issues.

## II. *Analysis*

A. *Whether the Court of Appeal properly processed the writ application under the expedited procedure authorized by Code of Civil Procedure section 1088*

 In *Palma, supra,* 36 Cal.3d 171, we outlined the procedure under which a court may issue a peremptory writ in the first instance (Code Civ. Proc., § 1088) in lieu of the usual alternative writ procedure (*id.,* § 1087). We noted that Code of Civil Procedure section 1088 "requires, at a minimum, that a peremptory writ of mandate or prohibition not issue in the first instance unless the parties adversely affected by the writ have received notice, from the petitioner or from the court, that the issuance of such a writ in the first instance is being sought or considered. In addition, an appellate court, absent exceptional circumstances, should not issue a peremptory writ in the first instance without having received, or solicited, opposition from the party or parties adversely affected." (36 Cal.3d at p. 180.) We also made clear that a peremptory writ in the first instance should not issue unless "it appears that the petition and opposing papers on file adequately address the issues raised by the petition, that no factual dispute exists, and that the

board certification information, names of individuals with whom the applicant has worked in a professional capacity, . . . [and] sensitive health information . . . ."

From these applications, petitioners apparently seek to determine, inter alia, whether any defendant-physician was previously denied staff privileges at any hospital.

additional briefing that would follow issuance of an alternative writ is unnecessary to disposition of the petition." (*Id.*, at p. 178.)

Recently, in *Ng* v. *Superior Court* (1992) 4 Cal.4th 29 [13 Cal.Rptr.2d 856, 840 P.2d 961], we cautioned that the accelerated procedure authorized in Code of Civil Procedure section 1088, and described in *Palma, supra,* 36 Cal.3d 171, "is the exception; it should not become routine. Generally, that procedure should be adopted only when petitioner's entitlement to relief is so obvious that no purpose could reasonably be served by plenary consideration of the issue—for example, when such entitlement is conceded or when there has been clear error under well-settled principles of law and undisputed facts—or where there is an unusual urgency requiring acceleration of the normal process. If there is no compelling temporal urgency, and if the law and facts mandating the relief sought are not entirely clear, the normal writ procedure, including issuance of an alternative writ (see *Palma, supra,* at pp. 177-178), should be followed." (*Ng, supra,* 4 Cal.4th at p. 35.)

Nothing in the record suggests any "unusual urgency" justifying expedited resolution of petitioners' writ application. And, as explained below (*post,* pp. 1224-1228), the Court of Appeal could not legitimately have concluded that petitioners' "entitlement to relief [was] so obvious that no purpose could reasonably be served by plenary consideration of the issue," or that the matter involved "conceded or . . . clear error under well-settled principles of law . . . ." (*Ng* v. *Superior Court, supra,* 4 Cal.4th at p. 35.) In fact, we conclude petitioners are *not* entitled to relief, and that the Court of Appeal erred by entertaining petitioners' writ application under Code of Civil Procedure section 1088.[3]

B. *Evidence Code section 1157*

■ ■ Evidence Code, section 1157, subdivision (a) (hereafter section 1157(a)) states: "*Neither* the proceedings nor *the records* of organized committees of medical . . . staffs in hospitals, or of a peer review body . . . having the responsibility of evaluation and improvement of the quality of care rendered in the hospital, . . . *shall be subject to discovery.*" (Italics added.)[4]

■ This provision raises the issue whether applications and reapplications for staff privileges are "records" of medical staff committees under

---

[3]Because we reach this conclusion, we need not, and do not, address whether, if the court had properly proceeded under Code of Civil Procedure section 1088, real parties in interest had a statutory or constitutional right to oral argument. We should defer consideration of that issue until we are presented with a case that meets the requirements set out in *Palma, supra,* 36 Cal.3d 171, and *Ng, supra,* 4 Cal.4th 29.

[4]By its terms, Evidence Code section 1157 creates only a privilege against discovery from medical staff committees; it does not create a bar against introduction of evidence. (Cf., e.g.,

section 1157(a). To answer this question, we briefly review the statutory and administrative scheme that governs the operation of hospitals in this state.

Hospitals have a dual structure. First, an administrative governing body (often comprised of persons other than health care professionals) takes ultimate responsibility for the quality and performance of the hospital. Second, an "organized medical staff" entity (composed of health care professionals) has responsibility for providing medical services, and is "responsible to the governing body for the adequacy and quality of the medical care rendered to patients in the hospital." (Cal. Code Regs., tit. 22, § 70703, subd. (a); see also *id.*, § 70701(a)(1)(F); Bus. & Prof. Code, § 805.5.)

The medical staff entity is required to perform various functions (e.g., "executive review, credentialing, . . . utilization review, infection control") through one or more committees. (Cal. Code Regs., tit. 22, § 70703, subd. (d).) State regulations require that medical staff committees have "formal procedures for the evaluation of staff applications and credentials, appointments, reappointments, [and] assignment of clinical privileges . . ." (*Id.*, tit. 22, § 70703, subd. (b)), and that applicants and reapplicants for hospital privileges must "demonstrate their ability to perform surgical and/or other procedures competently and to the satisfaction of an appropriate committee or committees of the staff, at the time of original application for appointment to the staff and at least every two years thereafter." (*Id.*, tit. 22, § 70701, subd. (a)(7).)

Given the statutory and regulatory scheme, it is clear that applications for staff privileges are the province of the hospital's medical staff committee. (*California Eye Institute* v. *Superior Court* (1989) 215 Cal.App.3d 1477, 1482-1483 [264 Cal.Rptr. 83]; *Peer Review Confidentiality, supra,* 24 Santa Clara L.Rev. 661, 670.) Although a hospital's administrative governing body makes the ultimate decision about whether to grant or deny staff privileges, it does so based on the recommendation of its medical staff committee. (See Health & Saf. Code, § 32128; Bus. & Prof. Code, § 805.5; *People* v. *Superior Court (Memorial Medical Center)* (1991) 234 Cal.App.3d 363, 372 [286 Cal.Rptr. 478]; *California Eye Institute, supra,* 215 Cal.App.3d 1477,

Ill.Rev.Stats. 1987, ch. 110, pars. 8-2101, 8-2102, quoted in *Ekstrom* v. *Temple* (1990) 197 Ill.App.3d [142 Ill.Dec. 910, 553 N.E.2d 424, 427].) Nor does section 1157 prevent a plaintiff from otherwise discovering relevant information by, inter alia, deposing a physician and asking whether he or she was previously denied staff privileges, or by reviewing public records to determine whether the physician has suffered a malpractice judgment or disciplinary action. (See Comment, *Anatomy of the Conflict Between Hospital Medical Staff Peer Review Confidentiality and Medical Malpractice Plaintiff Recovery: A Case for Legislative Amendment* (1984) 24 Santa Clara L.Rev. 661, 671, fn. 48 [hereafter *Peer Review Confidentiality*].)

1482; *Matchett* v. *Superior Court* (1974) 40 Cal.App.3d 623, 628 [115 Cal.Rptr. 317].)

Petitioners assert, however, that Evidence Code section 1157 does not protect applications for staff privileges from discovery, because such applications are not both "generated by the protected committee" and "pert[inent] to the committee's investigative and evaluative functions." *Hinson, supra,* 218 Cal.App.3d 1110, and the Court of Appeal below, embraced this reasoning. The Court of Appeal stated, "[w]e agree with the holding of *Hinson* in that an application for staff privileges prepared by an individual physician cannot reflect the investigation and evaluation of the medical staff committee."[5] We reject this interpretation of the statute.

First, nothing in section 1157(a) limits the privilege to records that are *generated by* a medical staff committee, and nothing in the statute supports the suggestion that materials *submitted to* a committee for review are not protected "records" of the committee. ■ "We give effect to statutes according to the usual, ordinary import of the language employed in framing them." (*West Covina Hospital* v. *Superior Court* (1986) 41 Cal.3d 846, 850 [226 Cal.Rptr. 132, 718 P.2d 119].) ■ The statute protects "records" of medical staff committees, and, contrary to petitioners' suggestion, we perceive no reason to suspect the Legislature intended to exclude staff applications from the definition of committee records, or to draw the "generated versus submitted" distinction advanced by petitioners.[6]

As the Florida Supreme Court recently noted when it addressed the same issue under a substantially identical statute protecting the "records" of

[5]In so holding, both courts conflicted with *Snell* v. *Superior Court* (1984) 158 Cal.App.3d 44, 47-49 [204 Cal.Rptr. 200], which afforded protection to medical staff applications under section 1157.

[6]In other contexts, the Legislature has broadly defined the term "record." Under the State Records Management Act (Gov. Code, § 14740 et seq.), "record" is defined as "all papers . . . and other documents produced, received, owned or used by an agency . . . ." (*Id.,* § 14741; see also Evid. Code, § 1560, subd. (a)(2)) [term business "record" "includes every kind of record maintained by . . . a business"].) We also note that the Legislature has enacted a number of related statutes to protect the peer review process. (See Civ. Code, §§ 43.7 [conditional immunity for actions taken by members of medical staff committees engaged in quality assurance activities], 43.8 [absolute immunity for those who communicate certain information to medical staff committees], 43.97 [conditional immunity from noneconomic damages for persons and hospitals for specified disciplinary action taken on recommendation of the medical staff], 47, subd. (b) [absolute privilege for "publication or broadcast" made "in the initiation or course of . . . proceeding[s] authorized by law and reviewable" by administrative mandamus].) This pattern of statutory protection, together with the fact that the Legislature has amended Evidence Code section 1157 numerous times to *expand* its scope (see *People* v. *Superior Court* (*Memorial Medical Center*), *supra,* 234 Cal.App.3d 363, 372), further suggests it is unlikely the Legislature intended a narrow or limited definition of "records" in section 1157(a).

medical staff committees, a court has no authority to qualify the statutory protection by limiting it to materials that are "generated by" a committee: "We reject the interpretation . . . that . . . documents, information, or records in the possession of the committee are not protected if they originated from sources outside the board or committee proceedings. If the legislature intended the privilege to extend only to documents created by the board or committee, then surely that is what it would have said." (*Cruger* v. *Love* (Fla. 1992) 599 So.2d 111, 114.) The Florida court concluded that an interpretation so limiting the privilege "would effectively eliminate the protections granted by the statute." (*Ibid.*)[7]

Second, based on the above described statutory and regulatory scheme governing medical review committees and the staff privilege application process, it seems clear to us that applications for staff privileges do indeed "pertain to the committee's investigative and evaluative functions." In fact, Hospital's medical staff committee is legally charged with the responsibility of administering, investigating and evaluating such applications. We thus reject petitioners' suggestion that applications for staff privileges do not pertain to the investigative and evaluative functions of peer review committees.[8]

Finally, petitioner's interpretation of section 1157(a) is contrary to the legislative purpose underlying that statute. ■ Of course, "the objective of statutory interpretation is to ascertain and effectuate legislative intent." (*Kimmel* v. *Goland* (1990) 51 Cal.3d 202, 208 [271 Cal.Rptr. 191, 793 P.2d 524].) ■ *Matchett* v. *Superior Court, supra*, 40 Cal.App.3d 623, described the genesis and purpose of the statute: "Evidence Code section 1157 . . . was enacted in 1968 in apparent response to . . . *Kenney* v. *Superior Court* (1967) 255 Cal.App.2d 106 [63 Cal.Rptr. 84]. [*Kenney*] sustained a malpractice plaintiff's claim to discovery of hospital staff records which might reveal information bearing upon the competence of the defendant

---

[7]Although some states with similar statutes are in accord (e.g., *Parker* v. *St. Clare's Hosp.* (1990) 159 A.D.2d 919 [553 N.Y.S.2d 533, 534]; *Humana Hospital* v. *Superior Ct.* (1987) 154 Ariz. 396 [742 P.2d 1382, 1388]), others take a narrower view of their statutory protections (see *post*, p. 1228, fn. 9).

[8]Accordingly, we reject the Court of Appeal's suggestion that Hospital's administrative staff is guilty of "[m]ere placement of the applications and reapplications for staff privileges in the medical staff committee files as a device to avoid discovery . . . ." (See *Santa Rosa Memorial Hospital* v. *Superior Court* (1985) 174 Cal.App.3d 711, 724 [220 Cal.Rptr. 236] ["Information developed or obtained by hospital administrators or others which does not derive from an investigation into the quality of care or the evaluation thereof by a medical staff committee, and which does not disclose the investigative and evaluative activities of such a committee, is not rendered immune from discovery under section 1157 merely because it is later placed in the possession of a medical staff committee or made known to committee members."].)

doctor. . . . [This raised] a public policy question [concerning] malpractice plaintiffs' access to medical files revealing committee investigations and appraisals of their peers. Section 1157 was enacted upon the theory that external access to peer investigations conducted by staff committees stifles candor and inhibits objectivity. It evinces a legislative judgment that the quality of in-hospital medical practice will be elevated by armoring staff inquiries with a measure of confidentiality.

"This confidentiality exacts a social cost because it impairs malpractice plaintiffs' access to evidence. In a damage suit for in-hospital malpractice against doctor or hospital or both, unavailability of recorded evidence of incompetence might seriously jeopardize or even prevent the plaintiff's recovery. Section 1157 represents a legislative choice between competing public concerns. It embraces the goal of medical staff candor at the cost of impairing plaintiffs' access to evidence." (*Matchett, supra,* 40 Cal.App.3d at p. 629, fns. omitted; accord, e.g., *County of Los Angeles* v. *Superior Court* (1990) 224 Cal.App.3d 1446, 1452-1453 [274 Cal.Rptr. 712]; *California Eye Institute* v. *Superior Court, supra,* 215 Cal.App.3d 1477, 1483-1484; *Snell* v. *Superior Court, supra,* 158 Cal.App.3d 44, 49; *Roseville Community Hospital* v. *Superior Court* (1977) 70 Cal.App.3d 809, 813-814 [139 Cal.Rptr. 170]; see also *Peer Review Confidentiality, supra,* 24 Santa Clara L.Rev. 661, 671-673 [background of Evidence Code section 1157].)

Again we agree with *Cruger* v. *Love, supra,* 599 So.2d 111, that the legislative policy articulated above applies equally to staff applications submitted to a hospital's medical committee: "Committee members and those providing information to the committee must be able to operate without fear of reprisal. Similarly, it is essential that doctors seeking hospital privileges disclose all pertinent information to the committee. Physicians who fear that information provided in an application might someday be used against them by a third party will be reluctant to fully detail matters that the committee should consider. Accordingly, we find that a physician's application for staff privileges is a record of the committee . . . for purposes of the statutory privilege." (*Id.,* at p. 114; cf. *People* v. *Superior Court* (*Memorial Medical Center*), *supra,* 234 Cal.App.3d at p. 373 ["The maintenance of high medical standards depends . . . on the accuracy of the information which the committees can obtain . . . ."].)

In the same vein, we agree with amicus curiae on behalf of Hospital that the approach advanced by petitioners and the Court of Appeal would lead to absurd and unintended results. Under petitioners' view, "every document submitted to a protected medical staff committee from an individual outside the committee, including all-important letters of reference (which often

contain crucial adverse information regarding physician competence and upon which the medical staff must act in order to assure patient safety), arguably will be subject to discovery. The immediately predictable result will be that physicians . . . will cease providing . . . negative information or constructive criticism . . . . Without this frank exchange of information, medical staffs will have no legal grounds upon which to initiate corrective action (such as restricting privileges, or requiring monitoring or further education) that could be critical to the protection of patients. Clearly such a result would be contrary to the Legislature's intent in enacting section 1157."[9]

## III. *Conclusion*

We conclude section 1157(a) protects from discovery the staff applications and reapplications in this case.[10] Accordingly, we reverse the judgment of the Court of Appeal, and remand with directions to deny the petition for a writ of mandate.

Mosk, J., Panelli, J., Kennard, J., Arabian, J., Baxter, J., and George, J., concurred.

---

[9]Some out-of-state cases construing similar statutes reach a contrary conclusion. (See, e.g., *Ekstrom* v. *Temple, supra,* 553 N.E.2d 424, 430 ["The candor sought to be promoted is on the part of the reviewing physicians, not on the applicant for privileges, and we do not believe that allowing discovery of applications would impede the review process."]; *State, Good Samar. Med. Ctr. etc.* v. *Maroney* (1985) 123 Wis.2d 89 [365 N.W.2d 887, 891-892]; *Shelton* v. *Morehead Memorial Hosp.* (1986) 318 N.C. 76 [347 S.E.2d 824, 831-832].) Assuming these cases accurately reflect the intent of their respective legislatures, for the reasons set out above, we are satisfied that our Legislature did not intend such a narrow interpretation of section 1157(a).

[10]*Hinson, supra,* 218 Cal.App.3d 1110, is disapproved to the extent it is inconsistent with this view.