[No. A081220. First Dist., Div. Two. Feb. 20, 1998.]

CONTRA COSTA NEWSPAPERS, INC., Petitioner, v.
THE SUPERIOR COURT OF CONTRA COSTA COUNTY, Respondent;
GAYLE BISHOP, Real Party in Interest.

## COUNSEL

Hosie, Wes, Sacks & Brelsford, James F. Brelsford, Rachel A. Silvers and Nicole A. Wong for Petitioner.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Eugene W. Kaster and Michael D. O'Reilley, Deputy Attorneys General, for Respondent.

No appearance for Real Party in Interest.

## OPINION

**THE COURT.**\*—Code of Civil Procedure section 206 provides safeguards against the unwanted disclosure of the identities of jurors in criminal cases. Its companion section 237 authorizes the sealing of records of juror identities based upon a showing of a "compelling interest." Can a trial court also issue a blanket order prohibiting "the press" from contacting jurors who have been discharged from their duties?

Petitioner Contra Costa Newspapers, Inc., challenges an order of respondent superior court made at the conclusion of a criminal trial which required the press to abide by the jurors' preference not to be contacted. Petitioner contends that the trial court's order violates the First Amendment's protection for news gathering, that the trial court's order does not satisfy the constitutional test for restraining the media from contacting former jurors, and that the trial court's order exceeded its authority under Code of Civil Procedure section 206. We agree that the order is invalid and must be vacated.

On June 18, 1997, at the conclusion of the criminal trial of real party in interest Gayle Bishop (Bishop), the trial court discharged the jury and ordered "the press" (which we presume to have been intended to include all types of media) to have no contact with the jurors:

"Before I send the jury out, I'd like to make it clear to anyone from the press, the jurors have told me that they do not choose to discuss their deliberations or how they reached a verdict. So I'm assuming everyone here has already received a 'no' from each of the jurors.

"If any juror disagrees with that, please raise their hand.

"That is my understanding. The jurors have not raised their hands. That means they are not to be contacted by the press, because they have already stated their preference not to be contacted."

On July 2, 1997, petitioner filed a motion asking the court to withdraw the order restraining the media from contacting former jurors, but the trial court never ruled on the motion. In December 1997, real party in interest Bishop filed a motion for a new trial, based in part on allegations of jury misconduct, and a hearing on the motion is scheduled for February 20, 1998. On December 24, 1997, petitioner requested an ex parte hearing seeking reconsideration of the earlier order prohibiting media contact, but that request was

---

\*Before Kline, P. J., Haerle, J., and Lambden, J.

denied. This petition followed. Real party Bishop takes no position on the issues raised in the petition. The Attorney General has filed opposition on behalf of respondent superior court.

## DISCUSSION

There is nothing in the record to show that any media organization was formally served with any order, subpoena or summons pertaining to the trial court's prohibition and therefore nothing to suggest jurisdiction has been established by the trial court over any entity other than petitioner, which has itself invoked the court's jurisdiction. Accordingly, we can neither determine the identity of the media the trial court was attempting to restrain nor the authority upon which it claimed to have jurisdiction to do so.

Presumably the trial court's ruling was based on Code of Civil Procedure section 206, which provides as follows:

"(a) Prior to discharging the jury from the case, the judge in a criminal action shall inform the jurors that they have an absolute right to discuss or not to discuss the deliberation or verdict with anyone. The judge shall also inform the jurors of the provisions set forth in subdivisions (b), (c), and (d).

"(b) Following the discharge of the jury in a criminal case, the defendant, or his or her attorney or representative, or the prosecutor, or his or her representative, may discuss the jury deliberation or verdict with a member of the jury, provided that the juror consents to the discussion and that the discussion takes place at a reasonable time and place.

"(c) Any unreasonable contact with a juror by the defendant, or his or her attorney or representative, or by the prosecutor, or his or her representative, without the juror's consent shall be immediately reported to the trial judge.

"(d) Any violation of this section shall be considered a violation of a lawful court order and shall be subject to reasonable monetary sanctions in accordance with Section 177.5 of the Code of Civil Procedure.

"(e) Nothing in the section shall prohibit a peace officer from investigating an allegation of criminal conduct.

"(f) Pursuant to Section 237, a defendant or defendant's counsel may, following the recording of a jury's verdict in a criminal proceeding, petition the court for access to personal juror identifying information within the court's records necessary for the defendant to communicate with jurors for the purpose of developing a motion for new trial or any other lawful

purpose. This information consists of jurors' names, addresses, and telephone numbers. The court shall consider all requests for personal juror identifying information pursuant to Section 237."

Code of Civil Procedure section 206, subdivision (f)'s companion, section 237, authorizes the court to seal personal juror identifying information at the conclusion of a criminal case if there is a showing on the record of facts that establish a "compelling interest against disclosure." "A compelling interest includes, but is not limited to, protecting jurors from threats or danger of physical harm." (§ 237, subd. (b).)

■ We begin by observing that news gathering is an activity protected by the First Amendment (*Branzburg* v. *Hayes* (1972) 408 U.S. 665, 681 [92 S.Ct. 2646, 2656-2657, 33 L.Ed.2d 626]), and the press has a qualified First Amendment right to attend court proceedings. In *Richmond Newspapers, Inc.* v. *Virginia* (1980) 448 U.S. 555 [100 S.Ct. 2814, 65 L.Ed.2d 973], a plurality of the court held that the public enjoys a qualified First Amendment right to attend criminal trials. In *Press-Enterprise Co.* v. *Superior Court of Cal.* (1984) 464 U.S. 501, 511 [104 S.Ct. 819, 824-825, 78 L.Ed.2d 629] (*Press-Enterprise I*), the court held that the public's constitutional right of access includes a right to attend the jury selection process in criminal trials. Again, however, the court indicated that this right is qualified and may be overcome by a showing of a compelling state interest. "The jury selection process may, in some circumstances, give rise to a compelling interest of a prospective juror when interrogation touches on deeply personal matters that person has legitimate reasons for keeping out of the public domain." (*Id.* at p. 511 [104 S.Ct. at p. 825].) Similarly, in *Press-Enterprise Co.* v. *Superior Court* (1986) 478 U.S. 1 [106 S.Ct. 2735, 92 L.Ed.2d 1] (*Press-Enterprise II*), the court held that the First Amendment right of public access extended with equal force to preliminary hearings in California. In summarizing its prior decisions, the court in *Press-Enterprise II* said, ". . . our decisions have emphasized two complementary considerations. First, because, a ' "tradition of accessibility implies the favorable judgment of experience," ' [citations], we have considered whether the place and process have historically been open to the press and general public. [¶] . . . [¶] Second, in this setting the Court has traditionally considered whether public access plays a significant positive role in the functioning of the particular process in question. . . . [¶] . . . If the particular proceeding in question passes these tests of experience and logic, a qualified First Amendment right of public access attaches. . . ." (*Id.* at pp. 8-9 [106 S.Ct. at p. 2740].)

Any inhibitions against news coverage of a trial carry a heavy presumption of an unconstitutional prior restraint (*Bantam Books, Inc.* v. *Sullivan*

(1963) 372 U.S. 58, 70 [83 S.Ct. 631, 639, 9 L.Ed.2d 584]), and where the state attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling government interest and is narrowly tailored to serve that interest. (*Globe Newspaper Co.* v. *Superior Court* (1982) 457 U.S. 596, 606-607 [102 S.Ct. 2613, 2619-2620, 73 L.Ed.2d 248].) In the absence of particularized findings reasonably justifying nondisclosure, federal courts have required that juror names and addresses must be made public after the trial has terminated. (See *In re Globe Newspaper Co.* (1st Cir. 1990) 920 F.2d 88; *Journal Pub. Co.* v. *Mechem* (10th Cir. 1986) 801 F.2d 1233 [93 A.L.R.Fed. 407]; *United States* v. *Sherman* (9th Cir. 1978) 581 F.2d 1358.)

■ Respondent contends that the order should be upheld because it is narrowly tailored to prevent a substantial threat to the administration of justice., i.e., the very real danger that citizens will be unwilling to serve on juries if their privacy is not respected. Respondent relies on cases discussing contact with jurors by the defendant or his or her attorney. (See *People* v. *Granish* (1996) 41 Cal.App.4th 1117 [49 Cal.Rptr.2d 45]; *Jones* v. *Superior Court* (1994) 26 Cal.App.4th 1202 [31 Cal.Rptr.2d 890].)

We distinguish cases dealing with contact by the parties from those dealing with contact by the news media. (See *Journal Pub. Co.* v. *Mechem*, *supra,* 801 F.2d at p. 1236 [while a court may broadly proscribe attorney and party contact with former jurors, it does not have the same freedom to restrict press interviews with former jurors].) The trial court is without the power to restrict the press's right to investigate and publish information which it has lawfully obtained. (*Nebraska Press Assn.* v. *Stuart* (1976) 427 U.S. 539 [96 S.Ct. 2791, 49 L.Ed.2d 683] [order prohibiting the reporting of evidence adduced at an open preliminary hearing violated the constitutional guarantee of freedom of the press]; *Oklahoma Publishing Co.* v. *District Court* (1977) 430 U.S. 308 [97 S.Ct. 1045, 51 L.Ed.2d 355] [the court cannot prohibit the publication of a juvenile's name and picture when that information has been lawfully obtained]; see also *San Bernardino County Dept. of Public Social Services* v. *Superior Court* (1991) 232 Cal.App.3d 188, 206-207 [283 Cal.Rptr. 332].) Here, three of the jurors have been identified in public court records and petitioner seeks only the right to contact those jurors of whom it is aware.

By its own terms Code of Civil Procedure section 206 grants to the jurors, unimpeded by the court, ". . . an absolute right to discuss or not to discuss the deliberation or verdict with anyone." There is no reference in the section restraining anyone other than the parties to the action and their representatives. Obviously, the statute does not purport to allow the court to prohibit

discharged jurors from discussing the case if they choose to do so. This record does not disclose the statements of the jurors to the trial judge but rather implies consent to the order by asking the jurors to "raise their hands" if they wished to speak; even if such consent were affirmatively expressed, it could not, in any event, establish jurisdiction over strangers to the action. Moreover, issuance of any such order without the further showing of a compelling need impinges upon constitutional rights, including not only the defendant's right to move for a new trial, but also the rights of jurors and the media. In this case the order was not directed at anyone in particular, it was not based on any showing of unreasonable behavior by anyone, and it was not carefully crafted to restrain conduct while preserving the constitutional rights of those interested in the trial.

Accordingly, we conclude that the trial court's order restricting press contact with former jurors was without jurisdiction and was impermissibly overbroad. It contained no time or scope limitations and encompassed every possible juror interview situation.

We have reached our decision after notice to all parties that we might act by issuing a peremptory writ in the first instance. (*Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-180 [203 Cal.Rptr. 626, 681 P.2d 893].) The entitlement to relief is obvious and there is also a compelling urgency in light of the forthcoming hearing on real party's new trial motion. (See *Alexander* v. *Superior Court* (1993) 5 Cal.4th 1218 [23 Cal.Rptr.2d 397, 859 P.2d 96]; *Ng* v. *Superior Court* (1992) 4 Cal.4th 29 [13 Cal.Rptr.2d 856, 840 P.2d 961].) Accordingly, let a peremptory writ of mandate issue commanding respondent superior court to vacate its order of June 18, 1997, prohibiting all press contact with the Bishop jurors and to allow the press access to the jurors in the Bishop trial who have been identified in public court records. Nothing in this opinion should be construed as requiring jurors to speak to the media or anyone else. A juror may speak or remain silent as he or she desires.

Our decision is final as to this court immediately. (Cal. Rules of Court, rule 24(d).)