108 Cal.Rptr.2d 764 (2001)
90 Cal.App.4th 267
The PEOPLE, Petitioner,
v.
The SUPERIOR COURT of Los Angeles County, Respondent; Rodrigo Alberto Jimenez, Real Party in Interest.
No. B148656.
Court of Appeal, Second District, Division One.
June 28, 2001.
Review Granted October 10, 2001.
*765 Steve Cooley, District Attorney, George M. Palmer, Head Deputy District Attorney, and Brent Riggs, Deputy District Attorney, for Petitioner.
Michael P. Judge, Public Defender, Judith Greenberg, Mark Harvis and John Hamilton Scott, Deputy Public Defenders, for Real Party in Interest.
No appearance for Respondent.
*766 MIRIAM A. VOGEL, J.
When a defendant's motion to suppress evidence has been granted and the action against him dismissed and then refiled, the defendant's subsequent motion to suppress evidence "shall be heard by the same judge who granted the motion at the first hearing if the judge is available." (Pen. Code, § 1538.5, subd. (p).) The question in this case is this: If a peremptory challenge is filed in the second action to disqualify the judge who granted the motion in the first action (Code Civ. Proc, § 170.6), is the judge "available" to hear the second suppression motion? Our answer is no.[1]

BACKGROUND
In April 2000, Rodrigo Alberto Jimenez was charged by felony complaint with one count of possessing cocaine. In August, Jimenez's motion to suppress the cocaine was granted (Hon. Michael E. Pastor) and the case was dismissed. In October, a second felony complaint was filed charging Jimenez with the same offense based on the same incident. Jimenez again moved to suppress the cocaine. The motion was set for hearing before the Honorable Marlene Kristovich but was transferred to Judge Pastor and set for hearing on February 6, 2001. On January 19, the People filed a peremptory challenge against Judge Pastor (§ 170.6) and the case was transferred back to Judge Kristovich. When Jimenez appeared in Judge Pastor's court on February 6, he learned (for the first time) that the People had filed a peremptory challenge. On February 6, Judge Kristovich transferred the case back to Judge Pastor. Judge Pastor reminded the parties that he had been disqualified and transferred the case back to Judge Kristovich. On February 7, at Jimenez's request, Judge Kristovich continued the hearing on the suppression motion to March 6.
On February 13, Jimenez filed a petition for a writ of mandate in the superior court, alleging that he was entitled to have his suppression motion heard by Judge Pastor. On February 26, in the absence of both sides and without first requesting opposition from the People, the superior court (Hon. Stephen E. O'Neil) granted the petition, issued a writ of mandate, and ordered Judge Pastor to hear Jimenez's motion to suppress.
The People then filed a petition for a writ of mandate in our court, asking us to command Judge O'Neil to vacate his order of February 26 and to issue a new order denying Jimenez's superior court petition. We stayed proceedings in the trial court, issued an order to show cause, set a briefing schedule, and set the matter for hearing.

DISCUSSION
In a series of related arguments, the People contend the effect of Judge Pastor's disqualification may be reviewed by us but not by another trial judge (that is, that Judge O'Neil had no jurisdiction to determine the effect of Judge Pastor's disqualification); that Judge O'Neil should have solicited opposition before he issued a writ; and that, notwithstanding the general rule that a second motion to suppress should be heard by the judge who granted the first motion, Judge Pastor is disqualified from presiding over any part of this case and thus cannot hear Jimenez's pending motion. We agree.[2]

*767 I.
We agree with the People that Judge O'Neil had no jurisdiction to determine the validity or effect of the peremptory challenge. By its plain language, section 170.3, subdivision (d), provides that "[t]he determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from the appropriate court of appeal ...." (Italics added; see also People v. Hull (1991) 1 Cal.4th 266, 268-275, 2 Cal.Rptr.2d 526, 820 P.2d 1036; People v. Webb (1993) 6 Cal.4th 494, 522-523, 24 Cal.Rptr.2d 779, 862 P.2d 779; Curie v. Superior Court (2001) 24 Cal.4th 1057, 1063, 103 Cal.Rptr.2d 751, 16 P.3d 166.)
Although Jimenez filed a petition within 10 days after notice of Judge Pastor's disqualification, he did not file it in the Court of Appeal and he did not attack the ruling on the peremptory challenge. Instead, he claimed in his superior court petition that, notwithstanding the peremptory challenge, subdivision (p) of section 1538.5 gives him the right to have Judge Pastor hear the suppression motion and that, to the extent this might be inconsistent with the effect of a peremptory challenge, the Penal Code trumps the Code of Civil Procedure. As explained below, Jimenez is wrong. Leaving that point to one side, Jimenez's characterization of his superior court petition as one based on section 1538.5 cannot confer jurisdiction on the superior court to make an order that it has no jurisdiction to make. Since any decision about Judge Pastor's ability to preside over Jimenez's case is necessarily a determination about the effect of the People's peremptory challenge, it is a determination that Judge O'Neil had no jurisdiction to make.[3]

II.
Jimenez contends his right to have Judge Pastor hear his second motion to *768 suppress necessarily means that, at least as to that motion, the People's peremptory challenge is irrelevant. We disagree.

A.
As relevant, subdivision (p) of section 1538.5 provides that if "a defendant's motion to ... suppress evidence in a felony matter has been granted twice, the people may not file a new complaint ... in order to relitigate the motion or relitigate the matter de novo at a special hearing in the superior court ... unless the people discover additional evidence relating to the motion that was not reasonably discoverable at the time of the second suppression hearing. Relitigation of the motion shall be heard by the same judge who granted the motion at the first hearing if the judge is available." (Italics added.) The italicized language applies to all relitigation of the suppression motion, "not just to suppression motions which have been heard two times." (Soil v. Superior Court (1997) 55 Cal.App.4th 872, 880, 64 Cal.Rptr.2d 319.)

B.
Once a peremptory challenge has been timely filed, the challenged judge is no longer "available" in that case. (§ 170.6, subd. (1) [upon acceptance of a peremptory challenge, the judge may not try any civil or criminal action or hear any matter therein].) The things that a disqualified judge may do are specifically enumerated in section 170.4, subdivision (a)and they do not include ruling on a motion to suppress.[4] Any question about matters not mentioned in subdivision (a) is resolved by subdivision (d) of section 170.4: "Except as provided in this section, a disqualified judge shall have no power to act in any proceeding after his or her disqualification or after the filing of a statement of disqualification until the question of his or her disqualification has been determined." (Italics added.) In our view, the italicized language is about as clear as any legislative mandate could be. (Paredes v. Superior Court (1999) 77 Cal.App.4th 24, 35, 91 Cal.Rptr.2d 350 [we must give effect to the plain meaning of the statute].)

C.
Section 1538.5, subdivision (p), is entirely consistent with sections 170.4 and 170.6. Subdivision (p) of section 1538.5 plainly contemplates situations where a judge will be unavailable to hear a second or third motion to suppress (§ 1538.5, subd. (p) ["if the judge is available"]), and there is nothing in section 1538.5 to suggest a legislative intent to distinguish between disqualification by peremptory challenge on the one hand, and disqualification by death, disability or retirement on the other. We can't think of any reason to make such a distinction, and Jimenez offers no suggestionshe simply asserts without authority that, "[o]bviously, Judge Pastor was `available' to hear the motion, since the motion was calendared in his court, but then transferred due to the People's challenge."
We appreciate Jimenez's concerns about prosecutorial forum shopping, and agree with our colleagues in Division Two that subdivision (p) was added to section 1538.5 to remedy that very problem (Soil v. Superior *769 Court, supra, 55 Cal.App.4th at p. 880, 64 Cal.Rptr.2d 319). If (under the circumstances of this case) the Legislature intended a different definition of "available" than suggested by the plain language of the statute, the Legislature can easily clarify its position by amending either section 170.4, subdivision (a), or section 1538.5, subdivision (p).[5] Unless and until that is done, the plain language of the statutes compels the conclusion that a disqualified judge is not "available" to hear a second or subsequent suppression motion.[6]
It follows that the People are entitled to the relief sought.

DISPOSITION
The petition is granted; a peremptory writ shall issue to direct the trial court to vacate its order granting Jimenez's petition and to enter a new order transferring this case to a judge other than Judge Pastor. Our order to show cause is discharged and our stay order is dissolved.
SPENCER, P.J., and ORTEGA, J., concur.
NOTES
[1] All references to section 1538.5 are to that section of the Penal Code; all other undesignated section references are to the Code of Civil Procedure.
[2] Jimenez contends our order to show cause is ineffective because it was "signed by only a single justice of this court [and a] single justice of this court does not have authority to issue an Order to Show Cause ..." He is mistaken. An order to show cause is not case-dispositive. It is nothing more than notice to the parties that the court has decided to address the merits of the petition; it is a notice of the dates for filing further papers and of the date for oral argument. For that reason, an order to show cause is issued by the Clerk of the court and is merely initialed by one justice. Although an alternative writ constitutes a determination that the petitioner has satisfied the prerequisites to writ review, and although an alternative writ may by its terms suggest to the trial court that it ought to change its order (Eisenberg, Horvitz & Wiener, Cal. Practice Guide: Civil Appeals & Writs (2000) Writs, § 15.151 et seq.; 6 Witkin & Epstein, Cal.Criminal Law (3d ed. 2000) Criminal Writs, §§ 69, 89, 98), an order to show cause is nothing more than the appellate equivalent of a clerk's notice of hearing. And where, as here, an order to show cause is accompanied by an order staying further proceedings in the trial court, it does not permit (let alone encourage) the lower court to change its order pending our review of the merits of the petition.
[3] There is one other procedural point. Absent exceptional circumstances, a court that has jurisdiction to issue a writ cannot do so in the first instance unless it has received or solicited opposition from the party or parties adversely affected. (Palma v. U.S. Industrial Fasteners, Inc. (1984) 36 Cal.3d 171, 178-180, 203 Cal.Rptr. 626, 681 P.2d 893; Lewis v. Superior Court (1999) 19 Cal.4th 1232, 1239-1241, 82 Cal.Rptr.2d 85, 970 P.2d 872.) Moreover, it is only when the petitioner's entitlement to relief is so obvious that no purpose could reasonably be served by plenary consideration of the issue that a writ should issue in the first instance and without a hearing. (Alexander v. Superior Court (1993) 5 Cal.4th 1218, 1223, 23 Cal.Rptr.2d 397, 859 P.2d 96.) If Judge O'Neil had jurisdiction to rule on Jimenez's petition, he should have solicited opposition and held a hearing. Since he had no jurisdiction, these points are moot.
[4] A disqualified judge may: take action or issue any order necessary to maintain the court's jurisdiction pending reassignment of the case; request another judge agreed upon by the parties to sit and act in the disqualified judge's place; hear and determine purely default matters; issue an order for possession prior to judgment in eminent domain proceedings; set proceedings for trial or hearing; and conduct settlement conferences. (§ 170.4, subd. (a).)
[5] Of course, that opens another can of worms. What happens when the judge who rules on the first suppression motion is thereafter disqualified for cause (§ 170.1) instead of by whim (§ 170.6)? What happens if (after the first case is dismissed) the defendant hires a new lawyer who is related to the judge who heard the first motion? (See § 170.1, subd. (a)(5) [a judge is disqualified if a lawyer or a spouse of a lawyer in the proceeding is the spouse, former spouse, child, sibling, or parent of the judge or judge's spouse or if such person is associated in the private practice of law with a lawyer in the proceeding].) We could go on, but we think we've made the point.
[6] As Jimenez concedes, Judge O'Neil's reliance on People v. Gallegos (1997) 54 Cal. App.4th 252, 266-268, 62 Cal.Rptr.2d 666, was misplaced. Although the prosecutor had attempted to challenge the trial judge in Gallegos, the challenge was not allowed and the second suppression motion was heard by the same judge who heard the first motion. On appeal, the appellant complained that a 1993 amendment to subdivision (j) of section 1538.5 was unconstitutional because it provides that, under specified circumstances, the ruling granting a motion to suppress is not binding when the case is refiled and the motion renewed. (§ 1538.5, subd. (j); People v. Gallegos, supra, 54 Cal.App.4th at p. 261, 62 Cal.Rptr.2d 666.) At the end of a lengthy discussion confirming the constitutionality of the amended statute, the Gallegos court mentions, in passing, that the appellant's second "motion was heard by the same judge who granted his earlier motion, as required by section 1538.5, subdivision (p). The same would be true as to defendants in general. Appellant received a full and complete hearing on his motion to suppress, which is all that due process requires." (People v. Gallegos. supra, 54 Cal.App.4th at p. 268, 62 Cal. Rptr.2d 666.) Plainly, the Gallegos court did not consider the issue raised in our case, and we therefore treat Gallegos as inapposite. (People v. Mazurette (2001) 24 Cal.4th 789, 797, 102 Cal.Rptr.2d 555, 14 P.3d 227 [a case is not authority for a proposition it has not considered].)